## Sam Stanfield v. The State.

No. 14150. Delivered April 22, 1931.

The opinion states the case.

*Edwardine Crenshaw Couch,* of Bonham, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, Presiding Judge.—The conviction is for assault with intent to murder; penalty assessed at confinement in the penitentiary for a period of two years.

Sam Stanfield had two sons, namely, George Stanfield and Elmer Stanfield. J. M. Blackwell was a deputy sheriff. He arrested George Stanfield and placed him in jail for drunkenness. Elmer Stanfield approached Blackwell, from whose testimony we quote:

"He (Elmer Stanfield) stopped me and says, 'What have you got that boy locked up for?' I told him because he was drunk. He said, 'God damn you, he was not drunk.' I said, 'Yes, he is and you are too.' I says, 'I will just take you down.' He says, 'You God damned old gray headed son-of-a-bitch, you can't take me nowhere.' Well, then is when the racket started. He just commenced kicking. Then Sam, his father,

run up with a knife. I had a pair of knucks and he says, 'If you hit him with them knucks, I will cut you in two.' Well, I hit the boy with the knucks. The boy was drunk. I had arrested this boy. I had hold of him and told him to come on, I would take him."

"When this trouble came up I did not have a warrant for the boy (Elmer Stanfield). I arrested him for being drunk and he commenced cursing me. There had been no complaint filed. When he asked me for the bond, I took hold of him and told him I was going to arrest him. He struck me and I hit him with my knucks. I hit him before I was cut. I don't think I hit him but once with the knucks before I was cut. * * * I had never seen Sam that day until he came up there and asked me for a bond. He never made any attempt to fight me when he asked me for the bond. * * * The defendant had not said anything to me until then, only to ask me for a bond for his boy, and then the fight started between me and the boy. This was election day and there were a good many people in town."

Blackwell received a stab wound which entered the abdominal cavity, was considered dangerous, and confined Blackwell in the hospital for about a week. That Blackwell was cut by the appellant was controverted, but the evidence is sufficient to support the finding of the jury that he inflicted the wound. During the altercation the son of Blackwell took part and knocked Elmer Stanfield down. The brother of Blackwell also appeared with a chair prepared for use as a weapon.

Whether Elmer Stanfield was drunk was a controverted question of fact. It was denied by him, and none of the many witnesses who testified in behalf of the state, save the prosecuting witness, stated that Elmer Stanfield was drunk. Elmer Stanfield denied the use of abusive language and said that he was hit on the head six or eight times with brass knucks and a number of serious wounds inflicted. This was not controverted. There is no description of any conduct of Elmer Stanfield supporting the inference that he was drunk. To establish that fact the state relied alone upon the conclusion of the officer. If Elmer Stanfield was drunk, he was subject to arrest under article 477, P. C. If he was not drunk, the officer was without authority to arrest him. If he was drunk, the arrest was illegal if excessive force was used. Article 1212, subd. 8, P. C., and article 241, C. C. P. The instructions to the jury were calculated to lead them to the conclusion that the drunkenness of Elmer Stanfield was proved. The charge should have been so framed as to make plain to the jury that unless Elmer Stanfield was drunk, his arrest was unauthorized. It is true that in submitting the law of self-defense, the jury were told that if, viewing the matter from his standpoint the appellant believed that the arrest of his son was unlawful and that Blackwell was stabbed by the appellant in order to protect his son, that there should have been an acquittal. In no part of the charge, how-

ever, is there given definite information to the jury by what measure they should determine whether the arrest was lawful or not. In that particular the charge is faulty. However, if the evidence were more cogent or conclusive to the point that Elmer Stanfield was drunk, we are impressed that the manner of the arrest cannot be regarded as lawful. The use of the metal knucks in the manner described by the undisputed testimony was manifestly unlawful. If one, not an officer, had possessed the metal knucks on the street and used them in the same manner he would have been guilty of a felony and subject to imprisonment in the penitentiary for a maximum of five years. P. C., art. 1151. An officer, in the discharge of his duty, has a right to have the metal knucks, but in the use of them, he is restricted by the statutes mentioned, which demand that his aggression go no further in making the arrest than is reasonably necessary to effect the end. When the officer, in making the arrest, transgresses such limitation, the right of self-defense inures to the party assaulted, and in the present case, such right was available to the appellant. That is, he was privileged to repel the attack with sufficient force to assert its threatened consequences, which right was restricted only by the law demanding that he should use no more force than was necessary, as viewed from his standpoint at the time. One making an illegal arrest, or one making an arrest in an illegal manner, is a trespasser, and the extent to which such an arrest may be lawfully opposed is governed by the law of self-defense. In protecting his liberty or preventing injury to his person, the law sets such a high value upon the liberty of the citizen that an attempt to arrest him is esteemed a provocation such as will reduce the grade of the offense. See Jones v. State, 26 Texas App., 11, 9 S. W., 53, 8 Am. St. Rep., 454; Ruling Case Law, vol. 2, p. 474; Alford v. State, 8 Texas App., 545; Snow v. State, 91 Texas Crim. Rep., 1, 237 S. W., 563, 20 A. L. R., 1180; Brown v. State, 87 Texas Crim. Rep., 261, 222 S. W., 252; Branch's Cr. Law, sec. 437; Lynch v. State, 41 Texas Crim. Rep., 510, 57 S. W., 1130; Miers v. State, 34 Texas Crim. Rep., 161, 29 S. W., 1074, 53 Am. St. Rep., 705; Earles v. State (Texas Crim. App.), 94 S. W., 464; Ex Parte Sherwood, 29 Texas Crim. Rep., 334, 15 S. W., 812.

Because of the matters mentioned we are constrained to order a reversal of the conviction, and will add that the facts in evidence are not deemed such as will support a conviction for assault to murder.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*