### I. D. DAUGHERTY V. THE STATE.

No. 22579. Delivered November 14, 1943.
Rehearing Denied January 5, 1944.

The opinion states the case.

*H. F. Grindstaff,* of Rotan, and *Tom Davis,* of Haskell, for appellant.

*Fred Stockdale,* District Attorney, of Aspermont, *Arthur Foster,* County Attorney, of Haskell, *Chas. T. Groce* and *W. E. Myres,* Special Prosecutors, both of Ft. Worth, and *Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the State penitentiary for a term of three years.

It was charged in the indictment that on or about the 2nd day of October, 1942, appellant did then and there, in Stonewall County, Texas, kill H. C. Walker by shooting him with a gun.

The venue of the case was changed by the court on his own motion from Stonewall to Haskell County, where the case was tried with the result as above stated.

Appellant challenges the sufficiency of the evidence to justify and sustain his conviction. In order that this opinion may clearly reflect the basis of our conclusion on the question, we deem it proper to state in substance the salient facts proven on the trial.

It appears from the record that the deceased, at the time of the unfortunate occurrence, held the position of constable at Aspermont, in Stonewall County, and was also employed by the said city to direct and control the traffic; that ill feeling had existed between appellant and deceased as the result of an illegal arrest of the appellant by the deceased for which appellant had instituted a civil action for damages and recovered a judgment in a nominal sum. The record further shows that serious threats were made by the deceased against the appellant, some of which were communicated to him; that on the afternoon of the day of the killing the deceased had made complaints against appellant for the offense of driving an automobile upon the public highway in excess of the speed allowed by law; that warrants for the arrest of the appellant were issued and placed in the hands of the deceased, who undertook to execute the same; that he found appellant sitting in his car on the street of Aspermont and informed him that he had warrants for his arrest and requested him to get out of his car and go with him to jail. Appellant declined to comply with this request, whereupon the

deceased drew a pistol and attempted to strike appellant with it; that he tried to place handcuffs on him but failed to accomplish his purpose. He then put his pistol back into the holster and struck at appellant with a billy, but the top of the automobile in which appellant was sitting prevented the free and effective use thereof; that the deceased then reached into the car and undertook to pull appellant out, at the same time striking him with the billy, whereupon appellant drew a pistol from the glove compartment of the car and shot the deceased four times, who fell to the sidewalk and expired. Appellant then drove to the courthouse and surrendered to the sheriff.

It will be noted from the foregoing statement of the evidence, as reflected by the record, that the deceased had a warrant for the arrest of the appellant; that at the time of the killing, the deceased was attempting to execute the warrant and take appellant into custody; that appellant resisted, whereupon the deceased attempted to pull him out of the automobile, but being unable to accomplish it, he resorted to the use of a club or billy as a more effective means of inducing appellant to submit to an arrest. But, instead of submitting to the majesty of the law, appellant drew a pistol from the glove compartment of his car and shot the deceased. It occurs to us that under such circumstances his perfect right of self-defense had ceased to exist. It is our opinion that the evidence is amply sufficient to support the conviction.

Many bills of exception are brought forward complaining of the rulings of the court in the admission of evidence, some of which are duplications or at least may be termed duplications, as will appear from Bills of Exception Nos. 1, 1-A, 1-B and 1-C, wherein appellant complains because the trial court permitted the State, on cross-examination of him, to ask him if he was the same I. D. Daugherty who, in February, 1933, was indicted by the grand jury in Stonewall County and charged with an assault with intent to murder Bill Lee by shooting him with a gun and if he did not plead guilty and was fined $25.00, to all of which appellant objected on the ground of being too remote and highly prejudicial. In his qualification of the bill, the trial court certifies that he instructed the jury that such testimony was admitted only as bearing upon the credibility of the defendant as a witness, if it did so, and that if they considered it at all, they should only consider it for the purpose for which it was admitted. It seems to be the settled rule in this State that where a defendant takes the witness stand and testifies in his own behalf, he may be asked if he had not theretofore been indicted for or convicted of a felony.

In 45 Tex. Jur. p. 11, sec. 250, it is said:

"The showing that the witness had been indicted or convicted may be excluded where it occurred so long before the instant trial that the law regards it as having no tendency to discredit the witness. A clean subsequent record of the witness, over a period of ten years or upwards, is regarded as destroying the impeaching value of such evidence, the precise period being within the discretion of the trial court, whose determination of the point will not be overruled in the absence of a clear showing of abuse."

Again, in Section 317, page 233, it is said:

"Hence the trial court may exercise discretion in determining whether the previous occurrence should be excluded for remoteness. (Cawthon v. State, 114 Tex. Cr. R. 86, 24 S. W. (2d) 435). However, the tendency of subsequent decisions is to hold that an interval of ten years (counting from the time of release from jail if the defendant served a term of imprisonment) renders the previous association with crime unavailable for impeachment, unless from the defendant's intervening conduct it appears that he has not reformed."

In the case of Shipp v. State, 104 Tex. Cr. R. 185, this court announced the rule that where the accused, on his trial, has testified as a witness, there is no fixed and arbitrary time within which other offenses charged against him, affecting his credi-witness, may be held too remote to have probative force. The court said:

"The receipt of such testimony should primarily be determined by the trial judge after an investigation, in the absence of the jury, to determine whether, under the ascertainable facts, the act is too remote. The exercise of such discretion is subject to review, and, in case of abuse, to be revised."

In the case of Cecil v. State, 100 S. W. 390, this court said:

"In prosecution for murder, it is competent to introduce evidence of former indictments against defendant for felonies, even though as to one of the charges there was a conviction for an aggravated assault."

Bills of Exception Nos. 3, 3-A, 5 and 8, show that on cross-examination of Ross Turner, a witness for defendant, he was asked if he had not seen the deceased out at his post of duty enforcing traffic laws and protecting school children, to which

appellant objected and reserved his exceptions. The court qualified the bills with the statement that the witness had previously testified without objection that he knew that the City Council of Aspermont and the Board of School Trustees had employed the deceased to enforce the traffic laws and protect school children from fast drivers. The bill, as thus qualified and accepted by appellant, fails to reflect any reversible error. When evidence is admitted without objection which is similar to or of like character as that objected to, no reversible error is shown. See Sparkman v. State, 82 S. W. (2d) 972; McLaughlin v. State, 109 Tex. Cr. R. 307; Vernon's Ann. Tex. C. C. P., Vol. 3, p. 271, note 32, and cases cited.

Bills Nos. 4, 4-A, and 5-A complain of substantially similar testimony. These bills carry the same qualification by the court and, in our opinion, fail to show any error.

Bill of Exception No. 6, in our opinion, is also without merit.

Bill of Exception No. 7 shows that Tom Long, a former deputy sheriff, was called as a witness by the defendant and testified, among other things, that in his opinion the deceased was a man who was calculated to carry into execution any threat that he might make; that he was a violent and dangerous man; that he (witness) had warned the defendant to protect himself. Upon cross-examination by the State, the witness testified that he had also arrested men whom some people thought he should not have arrested. Appellant objected to this testimony on the ground that it was not material and shed no light upon any issue in the case and was prejudicial. The objection was overruled and appellant excepted. The trial court qualified the bill and in his qualification states that the witness had testified that he had heard complaints that the deceased had made certain arrests. It appears to us that the witness sought to convey the idea that the deceased was using his official position as a means of harassing people. Consequently, to test the sincerity of the witness (who had been a deputy sheriff) he was asked the question complained of. However, under the facts as disclosed here, we fail to see any evil result from the testimony inasmuch as it tends to show an over-bearing disposition on the part of the deceased which, in our opinion, was beneficial to appellant rather than harmful to him. The conduct of the witness while he was deputy sheriff was not chargeable to appellant and could not have injuriously affected his legal rights.

Bill of Exception No. 9 complains of certain remarks made by the private prosecutor in his closing argument, but no objec-

tion was made thereto. Appellant now contends that it was highly prejudicial to him and that this court should reverse this case notwithstanding his failure to object thereto at the time it was made. To do so, we would necessarily depart from the established rules of this State and overrule many former decisions by this court. However, the bill is qualified by the trial court, and the qualification shows that even if an objection had been interposed, it would not have been of any avail to appellant as the remarks were made in reply to the argument indulged in by appellant's attorney.

Bill of Exception No. 10 complains of the testimony of G. H. McLaughlin, a chemist for the State Department of Public Safety, who testified that he examined a bullet and a shirt which had an entrance hole in it; that he made an examination of the approximate distance that the muzzle of the gun was from the shirt; that as a result of his examination of the articles he reached the conclusion that the gun was a distance of four feet or more from the shirt at the time it was fired. Then the witness entered upon an explanation of the method employed in making experiments with the gun used by appellant in killing the deceased and stated that the nitrates or powder imbedded in the cloth would vary according to the distance; that the closer the gun was to the object, the greater or more pronounced would be the powder burns, etc. The court also qualified this bill, and in his qualification thereof states that the witnesses were not agreed as to the distance the defendant was from the deceased at the time some of the shots were fired. In view of the court's qualification of the bill, we fail to see any reversible error reflected thereby.

No reversible error appearing in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

While nothing is presented for our consideration in appellant's motion for rehearing in addition to the matters discussed in the original opinion, it is strenuously insisted that an injustice has been done and that the "conviction should be set aside though there be evidence supporting the verdict." For this

position, reliance is had on Burkhalter v. State, 247 S. W. 544 and 18 Tex. Jur. page 430.

We concede the paramount rule of evidence to be that a conviction cannot be sustained where the evidence leaves reasonable doubt as to the guilt of the accused. Perkins v. State, 32 Tex. 109; Hardeman v. State, 12 Tex. App. 350. However, we have concluded, after a careful study of the facts of the case before us, that the announcement of so fundamental a principal does not aid appellant in a disposition of the instant case by this court. Questions of fact arising in the mind of the trial court, when properly before him, will be disposed of by him on motions for new trial, and his conclusions thereon are as binding upon this court as are the findings of the jury.

A large number of witnesses whose testimony on the subject stands uncontradicted pictured the deceased as a highly over-bearing man, diligent in the performance of his duty, but lacking in judgment. Apparently all of his fellow officers testified and concluded that he was a man who had no business carrying a gun. He was nervous, excitable, and was smarting under his defeat for reelection as constable. He had made threats against people as a class and had particularly singled out appellant on many occasions as one he was going to kill or going to "get" before his term of office expired. His conduct toward appellant in the presence of others on several occasions was insulting and was calculated to provoke a difficulty. In this he was persistent. Such threats as he made were many times conveyed to appellant. Had the deceased made an attack on appellant in a manner indicating an intent to carry out one of his many threats, appellant would have been warranted in using such force as would have appeared to him to be reasonably necessary in defending himself against death or serious bodily injury. The conduct of the officer, as detailed by many witnesses, and the manner of his approach in attempting the arrest which resulted in his death were such as to direct our most serious attention to the contention presented that appellant had a perfect right of self defense, contrary to the jury's finding.

We disclaim any intention to say in the original opinion that an officer has a right to approach a party whom he wishes to arrest and beat him into submission with his gun, blackjack, or other devise. The rule seems to be that when aggression of the officer in making the arrest exceeds what is reasonably necessary to effect the arrest the right of self defense inures to the party assaulted. Stanfield v. State, 38 S. W. (2d) 94, Vernon's

P. C. Art. 1212, Subdivision 8, and C. C. P. Art. 241, with annotations.

The many witnesses testified that the deceased approached appellant in rather a positive and probably excited manner and either had a pistol in his hand or secured it immediately. However, he replaced his pistol in its scabbard and secured what appeared to be a blackjack or billet and also his handcuffs. Appellant declined to be arrested and the officer was attempting to place the handcuffs on appellant at the time the first of the fatal shots was fired. There is no evidence in the case that he struck appellant with the pistol or with the billet. There is no positive evidence that he even tried to do so. Appellant, himself, does not claim that the deceased struck him or that it was the fear he was going to injure him at that particular time which was the immediate cause of the shooting. He was afraid to be arrested by the deceased because of the things that had transpired in the past and his fear of being improperly handled after the arrest. He was afraid to be carried to jail by him, alone, and does not say that he shot the officer to prevent an injury about to be inflicted upon him. He feared what the officer would do after the arrest and not what he was doing, or about to do, at that time.

We think this evidence did raise an issue of self defense which was properly submitted to the jury, but it certainly does not fulfill the requirements of the law to make it perfect self defense. The officer had a warrant which gave him the right to arrest appellant and appellant was not in the position of one who had a right to resist an illegal arrest. His only right was to defend himself against the conduct of appellant, which he feared, and it was for the jury to say whether or not he was so justified in doing this. They made their findings, and this court has no power to disturb it.

Appellant's motion for rehearing is overruled.