TEXAS DEPARTMENT OF PUBLIC
SAFETY and Adrian Rivera,
Petitioners,

v.

Melinda PETTA, Respondent.

No. 99–0204.

Supreme Court of Texas.

Argued Sept. 20, 2000.

Decided April 12, 2001.

Rehearing Overruled June 7, 2001.

Ann Kraatz, Sharon Felfe, Demetri Anastasiadis, John Cornyn, Atty. Gen., Andy Taylor, Shane Peter Phelps, Karen D. Matlock Louis Carrillo, Gregory S. Coleman, Julie Caruthers Parsley, Austin, for Petitioner.

William D. Mount, Jr., Roy S. Dale, Katie P. Klein, Kathryn M. Flagg, McAllen, Dale & Klein, McAllen, Paul G. Kratzig, Corpus Christi, for Respondent.

Justice ENOCH delivered the opinion of the Court.

A jury found Melinda Petta guilty of fleeing or attempting to elude a police officer.[1] In that criminal case, the jury necessarily concluded that the State proved beyond a reasonable doubt that in fleeing, Petta did not "have a reasonable belief that such act was immediately necessary to avoid imminent harm [caused by the police officer either to her or her children]...." [2] Despite her conviction, Petta,

---

1. *Petta v. State*, 840 S.W.2d 721 (Tex.App.— Corpus Christi 1992, pet. ref'd).

2. *State v. Petta*, Cause No. 90–0938–1, Reporter's Record at 431–32.

in this case, sued the police officer, Trooper Adrian Rivera, individually for assault, aggravated assault, battery, reckless conduct, and "terroristic threat." She sought to recover for her nonphysical, emotional injuries. Petta also sued Trooper Rivera in his official capacity and the Texas Department of Public Safety under the Texas Tort Claims Act, alleging that the Department is liable for those injuries proximately caused by Trooper Rivera's wrongful acts and negligence during the traffic stop and subsequent chase on the grounds that the Department negligently trained and supervised Rivera. As well, Petta sued the Department and Rivera in his official capacity for violations of 42 U.S.C. § 1983.

In responding to Petta's claims—essentially predicated on a claim of assault—Trooper Rivera pleaded that his actions were privileged under Texas law, asserting that his use of force was commensurate with the harm Petta created by fleeing. Thereafter, both Rivera and the Department moved for summary judgment based on collateral estoppel and on the public policy that a plaintiff should not be able to recover damages resulting from her own criminal conduct. Further, the Department moved for summary judgment based on sovereign immunity. The trial court rendered summary judgment for defendants without specifying the grounds, but the court of appeals reversed and remanded Petta's claims for trial.[3]

We must decide whether the jury's determination in the criminal case that Petta did not reasonably believe that she was in danger of imminent harm when she fled collaterally estops Petta from maintaining an action for assault against Rivera. We must also determine whether sovereign immunity bars the suit against the Department. Finally, we must decide whether

Rivera, in his official capacity, is subject to Petta's section 1983 claims.

Because the facts necessary to establish Petta's claims in this case against Rivera, individually, are the same facts necessarily found against Petta by the jury in the criminal case, collateral estoppel bars her claims against Rivera. Thus, we reverse the court of appeals' judgment and render judgment that Petta take nothing from Rivera. Concerning Petta's negligence claims against the Department, we conclude that the Department is entitled to judgment based on sovereign immunity. Finally, we hold that Rivera, in his official capacity, is not subject to suit under section 1983.

## I

### The Facts

In 1990, Trooper Rivera stopped Petta for speeding. Petta was with her two children. She began arguing with Rivera about how much she had been exceeding the speed limit, and she became upset when Rivera asked her about the age of her unrestrained three-year old in the front seat. At one point, Rivera walked back to his patrol car and Petta rolled up her window, leaving her doors locked. When Rivera returned, he asked her to roll down the window or to get out of the vehicle, but she refused.

Because this is an appeal of a summary judgment, we recite Petta's side of the story. First, she claims that she rolled up her windows because the car's air conditioning was on and it was starting to drizzle and that she refused to unlock her doors or get out of the car because she "was wary." Then, according to Petta, Rivera tried to open the door and started yelling obscenities at her. The incident escalated as he began beating the window

3. 985 S.W.2d 199.

with his nightstick and threatening to break the glass. At this point, Rivera stopped and called a tow truck and moved his cruiser in front of her car, but she pulled around him, apparently then stopping. Rivera again approached her window and ordered her to get out. When she again refused, Rivera allegedly aimed his handgun at her and threatened to kill her. Petta then fled in her car, and Rivera pursued. During the course of the pursuit, Rivera shot at her tires more than once. He also aimed his shotgun at her while he was driving, but a civilian observer in Rivera's cruiser, James Cleland,[4] took the shotgun away. Several other officers eventually captured Petta when the chase ended at her home.

The jury convicted Petta of fleeing or attempting to elude a police officer.[5] In the criminal case, Petta raised the defense of necessity. Thus, the State was required to prove beyond a reasonable doubt that Petta did not "have a reasonable belief that such act was immediately necessary to avoid imminent harm [caused by the police officer either to her or her children]...."[6]

During the first round of this civil litigation, the trial court granted summary judgment for the defendants, and the court of appeals reversed and remanded.[7] On remand, both Rivera and the Department moved for summary judgment on two grounds. First, they argued that the criminal jury found that Rivera's use of force was not believed by Petta to endanger her or her children with "imminent harm." And because the contrary fact is necessary to her civil recovery, collateral estoppel bars her claims against Rivera. Second, they argued that public policy bars Petta from maintaining a suit based on damages that arose out of her criminal conduct. The Department also moved for summary judgment based on sovereign immunity. Again, the trial court granted the summary judgments, but the court of appeals reversed, holding that Petta's claims were not barred by sovereign immunity, collateral estoppel, or public policy.[8]

## II

### Trooper Rivera's Liability

■ In response to Petta's tort claims against Rivera, Rivera asserts that collateral estoppel and the public policy against allowing plaintiffs to profit from their own criminal conduct entitle him to summary judgment.

Rivera argues that collateral estoppel bars Petta's claims because Petta cannot relitigate essential facts found against her in her criminal case and which are necessary to establish her claim in this civil case. Again, in defending against her prosecution for fleeing or attempting to elude a police officer, Petta pleaded the defense of necessity, arguing that Trooper Rivera's actions caused her to reasonably believe that she faced more "imminent harm" from Rivera's conduct than the potential harm the public might face on account of her unlawful flight. Once the necessity defense has been raised by the evidence, the prosecution has the burden to disprove this defense beyond a reason-

---

4. From the record, it appears that Mr. Cleland, a Department of Public Safety officer trainee, was on a ride-along training exercise with Trooper Rivera.

5. *Petta*, 840 S.W.2d 721.

6. *State v. Petta*, Cause No. 90–0938–1, Reporter's Record at 431–32; *see also* Tex.Penal Code §§ 2.03(d), 9.02.

7. *Petta v. Rivera*, 923 S.W.2d 678, 688 (Tex. App.—Corpus Christi 1996, writ denied).

8. 985 S.W.2d at 204, 206.

able doubt.[9] Had the jury believed Petta's defense, or had any reasonable doubt, it was instructed to find Petta not guilty. But the jury convicted her, thus rejecting her defense beyond a reasonable doubt.

■ Collateral estoppel applies when an issue decided in the first action is actually litigated, essential to the prior judgment, and identical to an issue in a pending action.[10] The doctrine is designed to promote judicial efficiency and to prevent inconsistent judgments by preventing any relitigation of an ultimate issue of fact.[11] Collateral estoppel does not require mutuality.[12] It applies when the party against whom it is asserted had a full and fair opportunity to litigate the issue in the prior suit.[13]

There is no doubt that Petta had an opportunity to fully litigate whether she reasonably believed she faced more imminent harm at the hands of Trooper Rivera than the potential harm the public might face from her illegal actions. Therefore, Petta is collaterally estopped from trying that issue in this case. The question is whether that issue is identical to an issue that must be proved in this case for Petta to recover civilly from Rivera. We think that it is.

■ In this case, Rivera pleaded the affirmative defense of privilege. A police officer is privileged to use force to the degree he reasonably believes is necessary to make an arrest, taking care that the force used is commensurate with the necessity.[14] If the officer uses more force than necessary, the suspect would then be justified to resist arrest.[15] A suspect may not presume that the threatened use of force by a law officer will become more than a threat, or that the use of force will be excessive.[16] Said another way, Rivera cannot be found liable for assault if he used no greater degree of force than reasonably necessary to arrest Petta. By the jury's conviction of Petta, it necessarily concluded that Petta did not have a reasonable belief of imminent harm that would otherwise excuse her flight from Trooper Rivera. In short, by convicting Petta, the jury found that the imminent harm Petta sought to avoid (Rivera's actions) did not clearly outweigh the harm she created by fleeing. This is an objective standard, measured by the standards that an ordinary and prudent person would apply to the circumstances that the actor faced.[17] And this is the same fact necessary to establish Rivera's privilege—that any imminent harm Rivera caused in using force against Petta was commensurate with the harm Petta potentially created by fleeing. Because both Petta's criminal necessity defense and Rivera's civil privilege

9. Tex.Penal Code §§ 2.03(d), 9.02; *Smith v. State*, 874 S.W.2d 269, 271 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd).

10. See *Johnson & Higgins, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 521 (Tex.1998).

11. See *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex.1994).

12. *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex.1990).

13. See *id.* (quoting *Tarter v. Metropolitan Sav. & Loan Ass'n*, 744 S.W.2d 926, 927 (Tex. 1988)).

14. Tex.Penal Code 9.51; *Harper v. State*, 84 Tex.Crim. 345, 207 S.W. 96, 97 (1918), *overruled on other grounds, Lenzen v. State*, 112 Tex.Crim. 297, 16 S.W.2d 234, 235 (1929).

15. *Daugherty v. State*, 146 Tex.Crim. 488, 176 S.W.2d 571, 575 (1943).

16. *Whiteside v. State*, 756 S.W.2d 765, 769 (Tex.App.—Corpus Christi 1988, pet. ref'd).

17. *Williams v. State*, 630 S.W.2d 640, 643 (Tex.Crim.App.1982).

defense turned on the same fact issue, i.e., the proportionality of Rivera's actions, collateral estoppel bars Petta from relitigating whether Rivera's use of force against Petta was privileged. Thus, Rivera is entitled to summary judgment on Petta's tort claims.[18]

## III

### The Department's Liability Under the Tort Claims Act

■ Assuming without deciding that Petta's negligent training and supervision claims against the Department survive collateral estoppel, we must now decide whether they are barred by sovereign immunity. The Tort Claims Act waives sovereign immunity from suits arising both from: (1) the negligent conduct of an employee if property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or equipment if the employee would be personally liable to the claimant; and (2) from injuries caused by a condition or use of tangible personal property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.[19] The Act specifically excludes waiver for a claim "arising out of assault, battery, false imprisonment, or any other intentional tort...."[20] Here, the conduct Petta complains of is the same conduct that forms the basis of her assault and battery claim against Rivera. The specific conduct-hitting the window, calling a tow truck, aiming the gun, blocking Petta in with the cruiser, and firing at Petta's tires-is clearly intentional. The allegations fit squarely within section 101.057's exclusion of claims arising out of assault, battery, and false imprisonment.

■ We have also said, however, that the Tort Claims Act waives sovereign immunity from suit for claims that an officer negligently carried out governmental policy.[21] But Petta does not allege facts demonstrating that Rivera negligently implemented policy. To support her negligence claim, Petta alleges that Rivera negligently ignored police procedure by continuing the pursuit, and that Rivera negligently ignored an order not to shoot at her car. But these too are intentional rather than negligent acts, and thus do not fall within the waiver of sovereign immunity.

■ Petta's claim that the Department negligently failed to furnish the proper training, instruction, training manuals, and documents to Rivera also fails. To state a claim under the Tort Claims Act, a plaintiff must allege an injury resulting from the "condition or use of tangible personal or real property."[22] We have long held that information is not tangible personal property, since it is an abstract concept that lacks corporeal, physical, or palpable qualitites.[23] In *Dallas County v. Harper*,[24] we concluded that simply reducing information to writing on paper does not make the information "tangible personal property."[25] And in *Kassen v. Hatley*,[26]

18. *See Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972).

19. *See* TEX.CIV. PRAC. & REM.CODE § 101.021.

20. *See id.* § 101.057.

21. *See City of Brownsville v. Alvarado,* 897 S.W.2d 750, 754 (Tex.1995); *State v. Terrell,* 588 S.W.2d 784, 788 (Tex.1979).

22. TEX.CIV. PRAC. & REM.CODE § 101.021(2).

23. *University of Tex. Med. Branch at Galveston v. York,* 871 S.W.2d 175, 179 (Tex.1994).

24. 913 S.W.2d 207 (Tex.1995).

25. *Id.* at 207–08; *York,* 871 S.W.2d at 179.

26. 887 S.W.2d 4 (Tex.1994).

we specifically held that the information in an emergency room procedures manual is not tangible personal property.[27] Thus, while instructional manuals can be seen and touched, the Legislature has not waived immunity for negligence involving the use, misuse, or non-use of the information they contain.[28] Because written information in the form of instructions and manuals is not tangible personal property, we conclude that the information contained in the Department's policy and training manuals in this case is not tangible personal property and, accordingly, does not give rise to a claim under the Tort Claims Act.[29] Likewise, Petta's claims that the Department failed to devise adequate tests to assess Rivera's emotional competence, and that it failed to discipline Rivera after the incident, also involve the misuse or non-use of information and are thus barred by sovereign immunity.

Finally, we note that Petta's reliance on *Young v. City of Dimmitt*[30] to support her negligent training claim is misplaced. In *Young*, we disapproved of a court of appeals' statement that an officer's intentional act necessarily precluded a suit for negligence under the Tort Claims Act. In doing so, we simply pointed out that a claim for negligent supervision or training was a distinct cause of action.[31] Nothing in what we said implied that this distinct cause of action was otherwise excepted from satisfying the Tort Claims Act's tangible personal property requirement. As we stated above, Petta's negligent training claim does not involve tangible

personal property. Accordingly, it is not cognizable under the Tort Claims Act.

Because sovereign immunity is not waived for Petta's claims, the Department is entitled to summary judgment.

## IV

### Petta's Section 1983 Claims

Petta sued the Department and Trooper Rivera, in his official capacity, under 42 U.S.C. § 1983. In her brief before this Court, Petta concedes that a governmental unit does not fall into section 1983's definition of a person and is not subject to section 1983 claims. We agree.

■ Nonetheless, Petta argues that Rivera could be subject to section 1983 liability in his official capacity. We note that Petta only brought this claim against Rivera in his official capacity; she did not sue Rivera under section 1983 in his individual capacity. In considering this exact issue, the United States Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under section 1983."[32] In reaching this decision, the Supreme Court recognized that a section 1983 suit against a state official in his official capacity is a suit against the state. Thus, Petta's section 1983 suit against Rivera in his official capacity is really a suit against the Department. We therefore hold that Rivera, in his official capacity, is entitled to summary judgment on Petta's section 1983 claims.

*Thomas v. Allen,*[33] on which the court of appeals relied to salvage this claim, does

---

27. *Id.* at 14.

28. *York,* 871 S.W.2d at 179.

29. *See id.; see also Holland v. City of Houston,* 41 F.Supp.2d 678, 711 (S.D.Tex.1999).

30. 787 S.W.2d 50 (Tex.1990).

31. *Id.* at *51.*

32. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

33. 837 S.W.2d 631 (Tex.1992).

not preclude summary judgment for the Department or Rivera in his official capacity. In *Thomas*, we simply recognized that a state court must entertain a federal section 1983 claim when the parties and controversy are properly before it.[34] This does not mean that a state court cannot render summary judgment on the basis of sovereign immunity from suit once the case is entertained and the merits are presented.

## V

### Conclusion

Because we conclude that collateral estoppel bars Petta's claims against Rivera, we do not reach Rivera's public policy argument. Thus, on Petta's state-law tort claims against Rivera, we reverse the court of appeals' judgment and render judgment that Petta take nothing from Rivera. And because we conclude that sovereign immunity bars Petta's actions against the Department, we reverse the court of appeals' judgment on those claims and render judgment that Petta take nothing from the Department. Finally, we agree that the Department is not subject to suit under 42 U.S.C. § 1983. And because we conclude that Rivera, in his official capacity, is also not subject to suit under section 1983, we reverse the court of appeals' judgment and render judgment that Petta take nothing from the Department or Rivera, in his official capacity, on the section 1983 claim.

---

34. *Thomas,* 837 S.W.2d at 632.