David DURBIN, Brenda Davis, Individually, and Brenda Davis, as Next Friend of Brenda Durbin, Appellants,

v.

CITY OF WINNSBORO, Appellee.

No. 06–03–00046–CV.

Court of Appeals of Texas, Texarkana.

Submitted March 31, 2004.

Decided April 29, 2004.

Clay M. Johnson, Coy Johnson, Johnson Law Firm, PC, Sulphur Springs, TX, for appellant.

Darren K. Coleman, Boon, Shavers, Echols & Coleman, PLLC, Longview, TX, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Jimmy Durbin died in a motorcycle accident while being pursued by Winnsboro city police officer Tony Browning. Jimmy's parents, David Durbin and Brenda Davis, and minor daughter, Brenda Durbin (collectively, the Durbins), brought suit against Browning for wrongful death and against the City of Winnsboro (Winnsboro) under respondeat superior and negligent entrustment, and seeking exemplary damages. The Durbins alleged in their original petition Browning was in pursuit of Jimmy when Browning purposefully "bumped" Jimmy's motorcycle with his patrol car, causing Jimmy to wreck. Browning then ran over Jimmy with his patrol car, killing him.

Winnsboro filed a plea to the jurisdiction of the court and a motion for summary judgment, contending that the Durbins had alleged an intentional tort and that their claim was therefore barred by the Texas Tort Claims Act. See TEX. CIV. PRAC. & REM.CODE ANN. § 101.001, et seq. (Vernon 1997 & Supp.2004). The trial court agreed, dismissed the Durbins' claims against Winnsboro, and severed those claims from all other causes of action, rendering the dismissal final for purposes of appeal.[1] The Durbins appeal, contending the trial court erred in sustaining Winnsboro's plea to the jurisdiction and in granting the motion for summary judgment. The Durbins also complain the trial court denied them an opportunity to amend their pleadings.

## Standard of Review

The State, its agencies, and subdivisions, such as cities, generally enjoy sovereign immunity from tort liability unless immunity has been waived. See TEX. CIV.

---

1. The Durbins' cause of action against Browning remained under Cause No. 2002– 155 in the 402nd Judicial District Court of Wood County.

PRAC. & REM.CODE ANN. §§ 101.001(3), 101.025; *County of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex.2002); *City of San Benito v. Ebarb*, 88 S.W.3d 711, 719 (Tex. App.-Corpus Christi 2002, pet. denied). If a defendant is cloaked with governmental immunity, a trial court lacks subject-matter jurisdiction. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999). The lack of subject-matter jurisdiction is properly raised by a plea to the jurisdiction. *Id.*

■ A plaintiff has the burden to allege facts affirmatively demonstrating the trial court has subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). In a suit against a city, a plaintiff must allege consent to suit either by reference to a statute or to express legislative permission. *Jones*, 8 S.W.3d at 638. Here, the Durbins contend their petition alleged claims against Winnsboro within the Tort Claims Act's limited waiver of sovereign immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021.

■ We review de novo the trial court's ruling on a plea to the jurisdiction. *See State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). We must construe the pleadings in the plaintiff's favor and look to the pleader's intent. *Brown*, 80 S.W.3d at 555; *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 804 (Tex.1989). A plaintiff bears the burden to allege facts affirmatively demonstrating the trial court's jurisdiction to hear a case. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *Mission Consol. Indep. Sch. Dist. v. Flores*, 39 S.W.3d 674, 676 (Tex.App.-Corpus Christi 2001, no pet.). A court deciding a plea to the jurisdiction is not required to look solely to the pleadings, but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex.2000). The court should, of course, confine itself to the evidence relevant to the jurisdictional issue. *Id.* If the plaintiff's pleadings are insufficient to demonstrate the court's jurisdiction, but do not affirmatively show incurable defects in jurisdiction, the proper remedy is to allow the plaintiff an opportunity to amend before dismissal. *Brown*, 80 S.W.3d at 555; *Peek*, 779 S.W.2d at 805.

To prevail on a motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). Summary judgment for a defendant is proper when the defendant negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993).

The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). However, once the movant establishes it is entitled to summary judgment, the burden shifts to the nonmovant to show why summary judgment should not be granted. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989). In reviewing a summary judgment, we accept all the nonmovant's proof as true and indulge every reasonable inference in the nonmovant's favor. *Sci. Spectrum, Inc.*, 941 S.W.2d at 911. All doubts about the existence of a genuine issue of a material fact must be resolved against the movant. *Johnson County Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996).

### Sovereign Immunity—Respondeat Superior

The Durbins pled that Winnsboro was liable for the acts of Browning under the doctrine of respondeat superior. The Tort Claims Act creates a limited waiver of sovereign immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021. In order for immunity to be waived under the Act, the claim must arise under one of the three specific areas of liability for which immunity is waived and the claim must not fall under one of the exceptions from waiver. *Alvarado v. City of Brownsville*, 865 S.W.2d 148, 155 (Tex.App.-Corpus Christi 1993), *rev'd & rendered on other grounds*, 897 S.W.2d 750 (Tex.1995). A governmental unit in this state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021.

It is undisputed Winnsboro is a governmental unit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(B). The pleadings and evidence showed that Jimmy's death arose from the operation or use of a motor vehicle driven by a Winnsboro police officer acting within the scope of his employment. The use of the patrol car by Browning in striking Jimmy's motorcycle, as alleged in the petition, caused Jimmy's injury and death. The Durbins' cause of action, therefore, falls under Section 101.021 of the Tort Claims Act.

Although immunity may be waived under the provisions of Section 101.021, certain acts are exempted from that waiver of immunity. The Act specifically excludes waiver for a claim "arising out of assault, battery, false imprisonment, or any other intentional tort, . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2).

Winnsboro contended in its plea to the jurisdiction and motion for summary judgment that the Durbins' petition alleged an intentional tort and was therefore excluded from the waiver of immunity under the Act. The Durbins' petition alleged the facts as follows:

10. On or about September 12, 2001, Jimmy Durbin was riding his motorcycle on State Highway 11, in Winnsboro, Texas. Tony Browning who was a police officer for the city of Winnsboro began chasing Jimmy Durbin on Highway 11. Tony Browning was driving a City of Winnsboro patrol car and was on duty at that time.

11. Tony Browning decided that he would "bump" the motorcycle driven by Jimmy Durbin. Tony Browning struck Durbin's motorcycle with his patrol car causing the motorcycle to wreck and subsequently was run over by Browning's patrol car. Jimmy Durbin was killed and his body dismembered.

In their response to Winnsboro's motion for summary judgment, the Durbins asserted Browning bumped Jimmy's motorcycle "in order to make him stop." The Durbins claimed Browning was negligent, careless, and reckless by failing to turn his motor vehicle to the right or left in an effort to avoid the complained-of collision; by operating his motor vehicle at a rate of

speed which was greater than the speed at which a person of ordinary prudence under the same or similar circumstances would have operated the vehicle; and by purposefully striking the motorcycle with his vehicle, causing Jimmy to wreck and to be struck and run over by the patrol car.

Winnsboro points to deposition testimony from Brenda Davis and David Durbin, who both assert that their contentions in the lawsuit are that Browning purposefully struck Jimmy's motorcycle. The Durbins insist that Winnsboro and Browning both deny Browning struck Jimmy's motorcycle and that the issue is "hotly contested."[2]

Winnsboro contended in its plea to the jurisdiction and motion for summary judgment that the Durbins' cause of action for negligent use of the patrol car is actually an allegation of an intentional tort because the Durbins alleged Browning intended his acts. The Durbins contend they did not allege an intentional tort because they did not allege Browning *intentionally injured* Jimmy. The Durbins cite *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex.1985), and *Bridges v. Robinson*, 20 S.W.3d 104, 114 (Tex.App.-Houston [14th Dist.] 2000, no pet.), *overruled in part on other grounds, Telthorster v. Tennell*, 92 S.W.3d 457, 464 (Tex.2002), in support of their position.

In *Reed Tool Co.*, 689 S.W.2d at 405, the plaintiff sued her husband's employer for loss of consortium for injuries he sustained on the job. Reed Tool contended the suit was barred by the Workers' Compensation Act. *Id.* The plaintiff alleged her suit was not barred by the Act because Reed Tool had intentionally caused her husband's injury by requiring him to operate a machine Reed Tool knew was unsafe. *Id.* at 405–06. The Texas Supreme Court noted that the fundamental difference between a negligence cause of action and an intentional tort is not whether the defendant intended the acts, but whether the defendant intended the resulting injury. *Id.* at 406. The court held that the intentional failure to furnish a safe place to work does not rise to the level of intentional injury except when the employer believes its conduct is substantially certain to cause the injury. *Id.* at 407.

In *Bridges*, 20 S.W.3d at 107, a man was involved in an altercation with a manager at a Dillard's department store. Dillard's security guards and Houston police officers responded to the altercation. *Id.* at 107–10. They dragged the man to the manager's office, "hog-tied" him, broke his ribs, and placed him on Dillard's curb. *Id.* He later died from his injuries. *Id.* The deceased man's family brought suit against the City of Houston under the Texas Tort Claims Act. *Id.* The city moved for summary judgment contending, among other things, that under Section 101.057 it was immune from liability for the intentional torts of its officers. *Id.* at 114. The city contended "hog-tying" and restraining the deceased was an intentional tort in the category of false arrest, imprisonment, and assault, which, as a matter of law, is not

---

2. The Durbins attached to their brief excerpts from the deposition testimony of Browning in which he denies having purposefully struck Jimmy's motorcycle. It is unclear from the record whether this entire deposition excerpt was before the trial court. The Durbins' response to Winnsboro's motion for summary judgment states that excerpts of Browning's deposition were attached, but it does not appear in the clerk's record or the reporter's record. Winnsboro concedes that pages 1, 54, 56, and 70–72 were included in the Durbins' response and were before the trial court. In pages 70–72, Browning states that he lost sight of Jimmy during the pursuit; that he came upon a thick cloud of smoke; that he panicked and braked, at which time he ran over something which he later discovered was Jimmy.

actionable under the Tort Claims Act. *Id.* The Houston Court of Appeals cited the Restatement (Second) of Torts' definition of intent: that "the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 8A (1965)). The court went on to hold that "[t]he fundamental difference between a negligence injury and an intentional injury is the specific intent to inflict injury." *Id.* (citing *Reed Tool Co.*, 689 S.W.2d at 406). The *Bridges* court found that the plaintiffs had pled that the police officers had negligently employed "hog-tie" restraints and that there was no summary judgment proof the officers intended to injure or kill the deceased. The court concluded the city had not established the appellees' claims as intentional torts; therefore, Section 101.057 was inapplicable.

Winnsboro contends, however, that, if a plaintiff pleads an intentional act, that is sufficient to plead an intentional tort under Section 101.057. Winnsboro cites several cases it contends support that proposition. *See Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex.2001); *City of Laredo v. Nuno*, 94 S.W.3d 786, 789 (Tex.App.-San Antonio 2002, no pet.); *Tarrant County Hosp. Dist. v. Henry*, 52 S.W.3d 434, 451 (Tex.App.-Fort Worth 2001, no pet.); *Huong v. City of Port Arthur*, 961 F.Supp. 1003, 1009 (E.D.Tex.1997). These cases all hold that, when a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, it is a claim for an intentional tort and barred by the Tort Claims Act. None of these cases, however, provide much detailed examination of what intent constitutes an intentional tort under the Act. In the majority of these cases, the intent to injure can be inferred from the act alleged.

In *Petta*, 44 S.W.3d at 577, the plaintiff was stopped by officers for speeding. An argument ensued over how much the plaintiff was exceeding the speed limit. *Id.* The officer returned to his patrol car, and the plaintiff rolled up her windows and refused to exit the vehicle. *Id.* The officer tried to open the door and started yelling obscenities. *Id.* The incident escalated as the officer began beating the window with his nightstick and threatened to break the glass. *Id.* at 577–78. The officer then allegedly aimed his handgun at the plaintiff and threatened to kill her. *Id.* at 578. The plaintiff fled in her car, and the officer pursued. *Id.* The officer shot at her tires more than once and pointed a shotgun at her during the pursuit. *Id.* Several other officers eventually arrested the plaintiff when the pursuit ended at her home. *Id.* The plaintiff sued the officer individually for assault, battery, reckless conduct, and terroristic threat. *Id.* at 577. She also sued the Texas Department of Public Safety under the Tort Claims Act, alleging the department was liable for the officer's wrongful acts and negligence under the theory that the department had negligently trained and supervised the officer. *Id.*

The court concluded that the plaintiff's claims against the department for negligent training and supervision were barred by the intentional tort exclusion of the Act. *Id.* at 580. The court found that the allegations against the department were the same conduct that formed the basis of her assault and battery claims against the officer. *Id.* The court found the specific acts of "hitting the window, calling a tow truck, aiming the gun, blocking Petta in with the cruiser, and firing at Petta's tires" were clearly intentional. *Id.* "The allegations fit squarely within section 101.057's exclusion of claims arising out of assault, battery, and false imprisonment." *Id.* The court, therefore, focused on whether the

officer's acts were intentional and did not analyze whether those actions were intended to cause injury.

In *Tarrant County Hosp. Dist.*, 52 S.W.3d at 439, the plaintiff alleged that, while she was working late at Tarrant County Hospital, a fellow employee locked the door so she could not leave and then sexually assaulted her. She sued the hospital district for negligence on the grounds that the hospital employee misused hospital property by disabling the alarm system at the institute and using a key to lock the doors so she could not escape his attack. *Id.* at 441. The court found these negligence claims by the plaintiff were barred because they were intentional tort claims arising from a rape that fell within the intentional tort exception to the Tort Claims Act's waiver of immunity from suit. *Id.* (citing *Delaney v. Univ. of Houston,* 835 S.W.2d 56, 59 (Tex.1992) (holding Tort Claims Act's intentional tort exception to waiver of immunity from suit applies to complaints based on intentional acts of government employees); *Scott v. Prairie View A & M Univ.,* 7 S.W.3d 717, 719 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (holding government has not waived immunity from suit for government employees' intentional acts); *Petta v. Rivera,* 985 S.W.2d 199, 205–06 (Tex.App.-Corpus Christi 1998) (same), *rev'd & rendered on other grounds sub nom., Tex. Dep't of Pub. Safety v. Petta,* 44 S.W.3d 575 (Tex.2001)). The court, again, focused on the intentional nature of the act. The intent to injure, however, could be inferred from the intentional act alleged, a rape.

In *Nuno,* 94 S.W.3d at 787, the plaintiff sued the City of Laredo for injuries she suffered during her arrest. During her arrest for a traffic violation, the arresting officer dragged her from the vehicle, threw her against the vehicle, hit her in the back with handcuffs, and kicked her legs. *Id.*

The plaintiff sued the city for negligence and gross negligence for the officer's: (1) failure to properly apply the handcuffs used in the plaintiff's arrest; (2) failure to properly place the plaintiff in the police vehicle; (3) failure to properly apply the laws in impounding the plaintiff's vehicle; (4) assault of the plaintiff; (5) negligence in arresting and physically injuring the plaintiff in front of her children; and (6) negligent indifference in leaving the plaintiff's children stranded without a means to return home. *Id.* at 788.

The court found that, although a governmental unit is immune from claims arising out of intentional torts, an injured party may still pursue a separate negligence claim arising out of the same facts. *Id.* at 789 (citing *Young v. City of Dimmitt,* 787 S.W.2d 50, 51 (Tex.1990); *Medrano v. City of Pearsall,* 989 S.W.2d 141, 144 (Tex.App.-San Antonio 1999, no pet.)). "[W]here the focus of a party's claim is on the governmental unit's negligent conduct, not the intentional conduct of its employee, the claim will not be said to arise out of the intentional tort." *Id.* (quoting *Medrano,* 989 S.W.2d at 144). "However, the intentional tort exception cannot be circumvented merely by alleging that the governmental unit was negligent in supervising the employee-tortfeasor." *Id.* (citing *Delaney,* 835 S.W.2d at 60; *Medrano,* 989 S.W.2d at 144).

The San Antonio Court of Appeals found that the focus of the claims asserted by the plaintiff listed above was on the officer's intentional tortious conduct despite the plaintiff's efforts to phrase the claims in terms of negligence. *Id.* For example, the officer's failure to properly apply the handcuffs and failure to properly place the plaintiff in the police vehicle were based on the officer's intentional tortious act of using excessive force to arrest the plaintiff. *Id.* In addition, the officer's failure to

properly apply the laws in impounding the plaintiff's vehicle, and his negligent indifference in leaving her children stranded, relate to his intentional decision to illegally seize the plaintiff's car. *Id.* (citing *Petta*, 44 S.W.3d at 580 (holding claim that officer negligent in ignoring police procedure was intentional act)). Further, the court found the assault of the plaintiff and the officer's actions in arresting and injuring the plaintiff arose from the officer's intentional tortious conduct. *Id.* Again, the court focused on the officer's alleged intentional acts to determine whether an intentional tort was alleged. The intent to injure, however, can also be inferred from the intentional act alleged, the physical beating of the plaintiff.

Winnsboro also contends that federal courts have focused on the intent to act, not the intent to injure, in the determination of claims under the Texas Tort Claims Act. In *Huong*, 961 F.Supp. at 1005, the defendant police officer, when faced with imminent threat of bodily harm or death, deliberately shot and killed the plaintiffs' decedent with his service pistol. The court found that, although the plaintiffs attempted to bring a claim for "negligence" arising from the alleged conduct of the officer, they described their claims arising from the shooting as the intentional tort of excessive force. *Id.* at 1008 (citing *Little v. Schafer*, 319 F.Supp. 190, 192 (S.D.Tex.1970) (holding where essence of claim under Tort Claims Act arises from intentional torts, allegations of negligence are insufficient to avoid Section 101.057 exception to liability); *City of San Antonio v. Dunn*, 796 S.W.2d 258, 261 (Tex.App.-San Antonio 1990, writ denied) (holding there was no waiver of municipal immunity under the Tort Claims Act where claims arose out of intentional torts of excessive force and false arrest)). The court found that the plaintiffs could not circumvent the intentional tort exception to waiver of municipal liability by simply pleading negligence, when the shooting event on which they based their claim was actually an intentional tort. *Id.* at 1009. The court therefore found that the officer's alleged intentional act of shooting the decedent was a claim for the intentional tort of excessive force. Whether the officer intended to injure the decedent was not analyzed. The court in *Hucker v. City of Beaumont*, 144 F.Supp.2d 696, 707–08 (E.D.Tex.2001), however, analyzed the *Huong* opinion to mean the officer had intended to shoot the decedent and intended to employ deadly force in doing so. The *Hucker* court found that the act of the officer in *Huong* accomplished the officer's intent and there was no negligence in achieving that intent. *Id.*

The cases cited by Winnsboro focus on whether the state actor intended his actions. There is little analysis given on whether the actor allegedly intended to cause injury. In most of these cases, the intent to injure can be inferred from the actors' conduct, i.e., committing a rape or physically beating someone. The cases cited by the Durbins, on the other hand, focus on the actors' intent to cause injury. Therefore, they suggest that, even if the actor intended his actions, if he did not intend the injury, it is not a claim for an intentional tort.

We adopt the analysis of the *Reed Tool* and *Bridges* courts of what constitutes an intentional tort under the Tort Claims Act: that the fundamental difference between a negligence cause of action and an intentional tort is not whether the defendant intended his or her acts, but whether the defendant intended the resulting injury. *Reed Tool Co.*, 689 S.W.2d at 406; *Bridges*, 20 S.W.3d at 114. The Durbins alleged in their petition Browning was negligent, careless, and reckless in failing to use reasonable care in operating and using the

patrol car. They allege he so acted by failing to avoid Jimmy, driving too fast, and purposefully striking the motorcycle. They do not allege, and no summary judgment evidence shows, that Browning intended to injure or kill Jimmy.

The cases cited by Winnsboro do not provide any determination or analysis on whether an actor must intend the injury for the intentional tort exception to apply. In the majority of those cases, the intent to injure can be inferred from the acts alleged, e.g., a rape or a physical beating. No such intent can be inferred from the pleadings in this case. The Durbins allege Browning purposefully bumped Jimmy's motorcycle to end the pursuit. There were no allegations that Browning intended to cause any injury by his actions, only that he intended to end the pursuit. The Durbins' claims against Winnsboro arising from the act of Browning "bumping" Jimmy's motorcycle are not claims for an intentional tort and are, therefore, not barred by the Tort Claims Act.

**Negligent Entrustment**

The Durbins also alleged in their petition that Winnsboro was the owner of the vehicle operated by Browning and that Winnsboro negligently entrusted that vehicle to a reckless and incompetent driver.

On appeal, the Durbins make no mention of this theory of liability, but focus on the inapplicability of the intentional tort exception in Section 101.057. We therefore assume the Durbins have abandoned that theory of liability, as it is not supported by any argument on appeal. *See May v. Nacogdoches Mem'l Hosp.*, 61 S.W.3d 623, 631 n. 13 (Tex.App.-Tyler 2001, no pet.).

Further, we have previously held that a claim for negligent entrustment does not state a cause of action under the Tort Claims Act. *Tex. Dep't of Criminal Justice v. Lone Star Gas Co.*, 978 S.W.2d 176,

178 (Tex.App.-Texarkana 1998, no pet.) (citing *Waldon v. City of Longview*, 855 S.W.2d 875, 880 (Tex.App.-Tyler 1993, no writ)).

The trial court therefore did not err in granting Winnsboro's motion for summary judgment in regard to the Durbins' claims for negligent entrustment.

**Exemplary Damages**

The Durbins also pursued exemplary damages against Winnsboro. The Tort Claims Act does not authorize exemplary damages. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.024. When a governmental unit is engaged in a proprietary function, however, that entity may be found liable for exemplary damages on a showing of "intentional, willful, or grossly negligent conduct which . . . can be imputed directly to the governing body of the [governmental unit]." *City of Gladewater v. Pike*, 727 S.W.2d 514, 519–22 (Tex.1987); *see also Thompson v. City of Corsicana Hous. Auth.*, 57 S.W.3d 547, 559 (Tex.App.-Waco 2001, no pet.). Nonetheless, Section 101.0215 expressly provides that "police and fire protection and control" are governmental functions, not proprietary ones. Tex. Civ. Prac. & Rem.Code Ann. § 101.0215. Therefore, a plaintiff cannot recover exemplary damages from a municipality for its governmental function in providing police protection.

The trial court did not err in granting Winnsboro's motion for summary judgment on the Durbins' claim for exemplary damages.

**Conclusion**

The Durbins' claims against Winnsboro under respondeat superior for the negligence of Browning are not barred by the intentional tort exception to the Tort Claims Act. The trial court therefore erred in sustaining Winnsboro's plea to the jurisdiction, and we reverse that ruling.

We also reverse the summary judgment against the Durbins on their claims against Winnsboro under respondeat superior. Because of this disposition, it is not necessary that we address the Durbins' contention that they should have been allowed to amend their pleadings.

The Durbins' claims for negligent entrustment and exemplary damages are barred by the Texas Tort Claims Act. We therefore affirm the trial court's granting of summary judgment on those claims.

For the reasons stated, we affirm in part and reverse in part, and remand this case to the trial court for further proceedings consistent with this opinion.