IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00072-CV

 

City of Waco,

                                                                                    Appellant

 v.

 

Robert Earl Williams, Jr. 

and Maggie Williams Walton,

Individually and on behalf 

of the Estate of Robert 

Earl Williams, Sr., Deceased,

                                                                                    Appellees

 

 

 



From the 414th District
Court

McLennan County, Texas

Trial Court No. 2005-3409-5

 



Opinion



 

In this interlocutory appeal of the
trial court’s denial of the city’s plea to the jurisdiction, we must decide if
the Texas Tort Claims Act’s intentional-tort exception to its waiver of
sovereign immunity applies when police officers shoot a person with Tasers.[1] 
We hold that the plaintiffs’ claims allege an intentional tort[2]
and that immunity has not been waived.  We will reverse the trial court’s
ruling and dismiss the case against the city for want of subject-matter jurisdiction.

Background

The plaintiffs, the children of Robert
Earl Williams, Sr., the decedent, sued the City of Waco under the Texas Tort
Claims Act (the TTCA).[3] 
See Tex. Civ. Prac. & Rem.
Code Ann. § 101.001 – .109 (Vernon 2005 & Supp. 2006).  Waco filed a plea to the jurisdiction, asserting that the trial court lacked
subject-matter jurisdiction because Waco is immune from suit.  The trial court
denied the plea, and this interlocutory appeal followed.  See id. § 51.014(a)(8) (Vernon Supp. 2006).

Standard of Review

A plea to the jurisdiction challenges
the trial court’s authority to determine the subject matter of the action.  Texas Dep’t Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999).  Whether the
trial court has subject-matter jurisdiction is a question of law that we review
de novo.  Texas Natural Resource Conservation Comm’n v. IT-Davy,
74 S.W.3d 849, 855 (Tex. 2002).  The plaintiff has the burden of alleging facts
that affirmatively establish the trial court’s subject-matter jurisdiction.  Texas Ass’n Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993).  In determining whether jurisdiction exists, we accept the allegations in the
pleadings as true and construe them liberally in favor of the plaintiff.  Texas Dep’t Parks & Wildlife v. Miranda, 133 S.W.3d 217, 227 (Tex. 2004).

The Pleadings

The Williamses pled the following facts
in their first amended original petition:

7.  On June 14, 2005, Waco police
responded to a call made by Mr. Williams’ sister, complaining that Decedent
would not leave her property.  By the time the officers arrived, the sister was
asking Mr. Williams [Decedent] to come back into her home since any
misunderstanding had been resolved.  As Mr. Williams attempted to walk back
towards his sister’s house, the officers tackled him, pushing and dragging him
to the ground.  Mr. Williams did not resist, and in fact simply held his hands
up as he lay prone.

 

8.  Suddenly and without provocation,
four officers at the scene stood over Mr. Williams as he lay helpless on the
ground and negligently began shooting him with Tasers, shocking him over and
over with 50,000 volts of electricity.  Each of the shooting officers
negligently held the Taser triggers for various durations, all the while causing
a continuous current to surge through Mr. Williams’ body.  While an initial
Taser blast is designed to last five seconds, subsequent blasts can last as
long as officers hold down the triggers.

 

. . .

 




10.  At no time did Mr. Williams
resist.  During much of this time, he was actually laying prone on the ground. 
He was shot with the Tasers while he was on the ground, immobilized, compliant,
and utterly defenseless.  He began to have difficulty breathing.  Whether it
was the screams of the witnesses, or the realization of what they had just
done, the officers eventually stopped shooting him with their Tasers.  As he
lay on the ground outside his sister’s home, his breathing grew more labored,
and he passed out.  Mr. Williams had stopped breathing by the time the
ambulance arrived and medical personnel’s efforts to revive him proved
fruitless.  At no time did any of the shooting officers—nor any other Waco police officer on the scene—attempt to revive him, or offer him medical assistance of
any kind.

 

. . .

 

12.  The official autopsy report stated
that Decedent’s death was a homicide, caused by “multiple electrical shocks
during attempted restraint by police.”  As a witness at the scene said in more
blunt and plaintive terms:  “They killed that man.”

 

            The
Williamses’ negligence cause of action alleges:

 

24.  Robert Earl Williams, Sr. died as
a direct and proximate result of the negligence of the City of Waco and its
agents, servants, and officers, including in the following particulars: 
furnishing and use of tangible personal property (Tasers) that were defective,
inadequate, and lacking integral safety component(s); negligent implementation
of a policy concerning the use of tangible personal property (Tasers); the
improper, negligent, careless and reckless use of inappropriate tangible
personal property; and undertaking to train and instruct the officers involved
in the use of Tasers, but then acting negligently in implementing its policies
by failing to adequately train and supervise those officers on the appropriate
use of Tasers.

 

Texas Tort
Claims Act

The TTCA provides a limited waiver of
sovereign immunity and allows suits against governmental units only in certain
narrow circumstances.  Texas Dep’t Crim. Justice v. Miller, 51
S.W.3d 583, 587 (Tex. 2001); see Tex.
Civ. Prac. & Rem. Code Ann. § 101.021.  We look to the terms of the
TTCA to determine the scope of waiver and then consider the particular facts of
the case to determine whether the case comes within that scope.  Miller,
51 S.W.3d at 587.  For immunity to be waived under the TTCA, a claim must arise
under one of the three specific areas of liability for which immunity is waived
and the claim must not fall under one of the exceptions from waiver.  Durbin
v. City of Winnsboro, 135 S.W.3d 317, 320 (Tex. App.—Texarkana 2004, pet.
denied).

A governmental unit in this state is
liable for:

            (1) property damage,
personal injury, and death proximately caused by the wrongful act or omission
or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal
injury, or death arises from the operation or use of a motor-driven vehicle or
motor-driven equipment;  and

(B) the employee would be personally
liable to the claimant according to Texas law;  and

            (2) personal injury and
death so caused by a condition or use of tangible personal or real property if
the governmental unit would, were it a private person, be liable to the
claimant according to Texas law.

 

Tex. Civ. Prac. & Rem. Code Ann. § 101.021.

            

            One of the TTCA’s exceptions
from this waiver of immunity is the intentional-tort exception:  the TTCA does
not apply to a claim “arising out of assault, battery, false imprisonment, or
any other intentional tort, including a tort involving disciplinary action by
school authorities.”  Id. § 101.057(2).




Discussion

In its first and second issues, Waco asserts that the trial court lacked subject-matter jurisdiction because the
Williamses did not plead a cause of action for which Waco’s sovereign immunity
has been waived—that the Williamses’ negligence claims are claims arising out
of an intentional tort.  Waco relies on a line of cases standing for the
proposition that a negligence claim under the TTCA cannot arise out of the
intentional acts, including excessive force, of a law enforcement officer
against a person:


 Texas
 Dep’t of Pub. Safety v. Petta,
 44 S.W.3d 575, 580 (Tex. 2001) (plaintiff’s
 claim that officer was negligent in ignoring police procedure did not
 obviate fact that officer’s conduct was intentional; conduct complained of—officer’s
 hitting car window, aiming gun, blocking car in with police cruiser, and
 firing at car’s tires—was clearly intentional; despite plaintiff’s claim
 that injuries were proximately caused by officer’s and department’s
 negligence, plaintiff’s allegations fit squarely within section 101.057’s
 exclusion).


 


 Harris
 County v. Cabazos,
 177 S.W.3d 105, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding
 intentional-tort exception applicable to plaintiff’s negligence claim that
 officer, who had intentionally shot plaintiff during traffic stop, negligently discharged his pistol and negligently effectuated
 arrest).


 


 Morgan v. City of Alvin, 175 S.W.3d 408, 418-19 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding intentional-tort exception applicable
 to plaintiff’s negligence claim arising out of plaintiff’s allegation that
 officer negligently instigated a physical confrontation, handcuffing
 appellant, dragging him out of laundromat, slamming his head against hood
 of parked car, and “smashing his person” to the gravel parking lot).


 


 City of Garland v. Rivera, 146 S.W.3d 334, 337 (Tex. App.—Dallas 2004, no pet.) (finding no immunity waiver under intentional-tort
 exception where plaintiff’s father died after use of force during arrest; plaintiff’s
 claim that police negligently used pepper spray, handcuffs, and K-9 unit
 hinged on intentional, rather than negligent, conduct).


 


 City of Laredo v. Nuno, 94 S.W.3d 786, 788 (Tex. App.—San Antonio 2002, no pet.) (despite
 plaintiff’s efforts to phrase claims in terms of officer’s negligent
 failure to properly place plaintiff in police vehicle and negligent
 indifference of other officers and city, focus of plaintiff’s claims
 against city was officer’s intentional tortious acts of using excessive
 force to arrest plaintiff and to illegally seize car).


 


 Medrano v. City of Pearsall, 989 S.W.2d 141, 144 (Tex.
 App.—San Antonio 1999, no pet.) (where
 focus of claim was on officers’ alleged violent and negligent beating of
 handcuffed driver, intentional-tort exception could not be circumvented
 merely by alleging negligent hiring, negligent training, and negligent
 failure to train).


 


 City of San Antonio v. Dunn, 796 S.W.2d 258, 261 (Tex. App.—San Antonio 1990, writ denied) (plaintiff’s claim that officer wrongfully arrested
 him and negligently applied handcuffs so tightly that they caused
 discomfort and swelling to wrist arose out of intentional tort).[4]


 

“If a plaintiff pleads facts which
amount to an intentional tort, no matter if the claim is framed as negligence,
the claim generally is for an intentional tort and is barred by the TTCA.  A
plaintiff cannot circumvent the intentional tort exception by couching his claims
in terms of negligence.”  Cabazos, 177 S.W.3d at 111 (citations
omitted).

In response, the Williamses cite three
cases that they claim support the conclusion that they have not pled an
intentional tort.  In Parrish v. City of San Augustine, 10 S.W.3d 734 (Tex. App.—Tyler 1999, pet. dism’d w.o.j.), a wrongful-death case arising from a police
shooting, the city appealed both the trial court’s denial of its plea to the
jurisdiction on sovereign immunity and its motion for summary judgment on
official immunity.  In upholding the trial court’s denial of the plea, the
court considered only the plaintiffs’ pleadings; it rejected the city’s
reliance on the summary judgment evidence.  Id. at 739-40.  Relying solely
on the pleadings—in which the plaintiffs alleged that the decedent was
“‘negligently shot and killed’” by a police officer who negligently used his pistol
when “‘such use was not reasonable or reasonably necessary to control or subdue
a citizen and negligently endangered those in the vicinity’”—the court held
that the intentional-tort exception did not bar the suit.[5] 
 Id.

In Bridges v. Robinson, 20 S.W.3d
104 (Tex. App.—Houston [14th Dist.] 2000, no pet.), overruled in part on
other grounds by Telthorster v. Tennell, 92 S.W.3d 457, 464 (Tex. 2002), a man involved in an altercation at a department store was confronted by security
guards and Houston police officers, who dragged the man to an office, “hog-tied”
him, broke his ribs, and placed him on the curb outside; he later died from his
injuries.  In the wrongful-death suit against the city under the TTCA, the city
moved for summary judgment, contending that, under section 101.057, “hog-tying”
and restraining the deceased was an intentional tort in the category of false
arrest, false imprisonment, and assault and was not actionable under the TTCA. 
The court stated that “[t]he fundamental difference between a negligence injury
and an intentional injury is the specific intent to inflict injury.”  Id. at 114 (citing Reed Tool Co. v. Copelin, 689 S.W.2d 404, 406 (Tex. 1985)).[6] 
The plaintiffs had pled that the police officers had negligently employed “hog-tie”
restraints, and there was no summary judgment proof the officers intended to
injure or kill the deceased.  Id.  Relying primarily on Reed Tool,
the court concluded the city had not established the plaintiffs’ claims as
intentional torts; therefore, section 101.057 was inapplicable.  Id.

Finally, and perhaps most instructive, is
Durbin v. City of Winnsboro.  Durbin, 135 S.W.3d 317.  There the parents
of the decedent sued the city after one of its officers bumped the decedent’s
motorcycle with his patrol car in an attempt to stop the decedent during a
chase.  The decedent wrecked, and the patrol car ran over and killed him. 
After the trial court denied the city’s plea to the jurisdiction and motion for
summary judgment on the intentional-tort exception, on appeal the city argued
that the plaintiffs had pled an intentional act—the officer’s bumping of the
decedent’s motorcycle—and thus an intentional tort under section 101.057.  The
court’s analysis included a discussion of Petta, Nuno, and Huong,
noting how the intent to injure could be inferred from the alleged intentional
acts in those cases.  Id. at 322-24.  But the court also examined
and adopted the analyses of Bridges and Reed Tool, noting their
focus on whether the actors intended to cause injury.  Id. at
324.  Applying that focus to the plaintiffs’ allegation that the officer
intended to bump the decedent’s motorcycle—and being unable to infer an intent
to injure from that act—the court found that the plaintiffs’ claims did not
arise from an intentional tort.  Id. at 325.

Under both lines of cases, we find that
the Williamses’ claims allege an intentional tort and that section 101.057
applies to except the claims from the TTCA’s waiver of sovereign immunity. 
Plainly, under the Petta line of cases, the Williamses have alleged
claims that “arise out” of the officers’ use of force—repeated Tasering—against
the decedent, which allege the intentional tort of assault.[7] 
“‘There is, properly speaking, no such thing as a negligent assault.’”  Medrano,
989 S.W.2d at 145 n.2 (quoting W. Page
Keeton, et al., Prosser and Keeton on The Law of Torts, § 10, at 46 (5th
ed. 1984)); see also Tarrant County Hosp. Dist. v. Henry, 52
S.W.3d 434, 441 (Tex. App.—Fort Worth 2001, no pet.) (“The plaintiff must
allege facts that, if true, would support a negligence claim apart from a claim
for an intentional tort.”).

If we were to apply the Reed Tool/Durbin
line of cases,[8]
we would infer from the act of Tasering an intent to cause an injury that is more
than mere offensive touching.[9] 
An intentional tort requires a specific intent to inflict injury, Reed Tool,
689 S.W.2d at 406, but an actor need not intend the specific injury complained
of for an intentional tort to be committed.  See Texas State Technical
College v. Wehba, 2006 WL 572022, at *2 (Tex. App.—Eastland Mar. 9, 2006,
no pet. h.) (mem. op.).  Although the officers may not have intended the
result—Mr. Williams’s death—the pleadings allege that they did intentionally
shoot him repeatedly with Tasers, and we would infer from their acts that they
did intend an injury that is more than mere offensive touching.  We sustain Waco’s first and second issues.

In issues three and four, Waco asserts that the Williamses’ claims of negligent implementation of policy and
negligent training fail because the TTCA does not waive sovereign immunity for
its exercise of discretionary powers and for claims arising from the method of
providing police protection.

Although the Tort Claims Act waives
sovereign immunity for claims that an officer negligently carried out
governmental policy, Petta, 44 S.W.3d at 580, the negligent
implementation theory of liability does not itself waive immunity.  Guadalupe-Blanco River Auth. v. Pitonyak, 84 S.W.3d 326, 342 (Tex. App.—Corpus
Christi 2002, no pet.).  It arises only after a plaintiff has established a
waiver of immunity under some other provision of the Texas Tort Claims Act.  Id.  Accordingly, a plaintiff has to state a waiver of immunity under some provision
of section 101.021 of the civil practice and remedies code before she can
invoke a claim of negligent implementation of policy.

 

Rivera, 146 S.W.3d at 338.  A claim of
negligent training also does not state a claim under the TTCA because it does not
allege an injury resulting from the “condition or use of tangible personal or
real property.”  Id. at 338-39 (citing Petta, 44 S.W.3d at 580); see
Nuno, 94 S.W.3d at 789-90.  The trial court erred in not granting Waco’s plea to the jurisdiction on the Williamses’ claims for negligent implementation of
policy and negligent training; they have not shown a waiver of sovereign
immunity under the TTCA.  We sustain issues three and four.

We need not address issue five, as the
Williamses concede they are not suing Waco for strict products liability.




Conclusion

We reverse the trial court’s denial of Waco’s plea to the jurisdiction and dismiss the case against the City of Waco.  Tex. R. App. P. 43.2.

 

 

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

(Chief Justice Gray concurs in the judgment
only, without a separate opinion.)

(Justice Reyna dissenting)

Reversed;
case dismissed

Opinion
delivered and filed October 18, 2006

[CV06]









[1]               “A
‘taser’ is an electronic device used to subdue violent or aggressive
individuals.  By pressing a lever, a high voltage electrical current is
transmitted through a wire to the target.”  Nicholson v. Kent County
Sheriff’'s Dept., 839 F. Supp. 508, 515, n.4 (W.D. Mich. 1993).  Taser
darts are “designed to stun a combative suspect.”  Koon v. United States, 518 U.S. 81, 86, 116 S.Ct. 2035, 2041, 135 L.Ed.2d 392 (1996).  Another
court described a taser gun as follows:

[A] taser
gun is a Conducted Energy Weapon that uses propelled wire to conduct energy to
a remote target, thereby controlling and overriding the body’s central nervous
system.  The taser gun fires two probes up to a distance of twenty-one feet
from a replaceable cartridge. These probes are connected to the taser gun by
high-voltage insulated wire.  When the probes make contact with the target, the
taser gun transmits electrical pulses along the wires and into the body of the
target, through up to two inches of clothing.

Draper v. Reynolds, 369 F.3d 1270, 1273
n.3 (11th Cir.), cert. denied, 543 U.S. 988 (2004).

 





[2]               We express no opinion
about the merits of the claim.

 





[3]               The Williamses have also
sued Taser International, Inc. for products liability and Jerry R. Staton for
negligent training of Waco police officers in the use of Tasers.





[4]               Federal
courts in Texas have applied the same analysis in finding no waiver of
immunity.  See, e.g., Gonzales v. City of Corpus Christi, 2005 WL
3058168, at *11-12 (S.D. Tex. Nov. 9, 2005) (despite claim of alleged misuse of
handcuffs and leg irons, “all of plaintiff's damages arise out of the claimed
instance of excessive force”); Holland v. City of Houston, 41 F. Supp.
2d 678, 713 (S.D. Tex. 1999) (“Where the essence of a claim under the TTCA
arises from an intentional tort, allegations of negligence are insufficient to
avoid the § 101.057 exception to liability.”); Huong v. City of Port Arthur,
961 F. Supp. 1003, 1008-09 (E.D. Tex. 1997) (“Plaintiffs cannot circumvent the
intentional tort exception to waiver of municipal liability by simply pleading
negligence when the shooting event upon which they base their claims is
actually an intentional tort.”).





[5]               The supreme court has
since held that a court deciding a plea to the jurisdiction is not required to
look solely to the pleadings, but may consider evidence and must do so when
necessary to resolve the jurisdictional issue raised.  Texas Dep’t
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 223-24 (Tex. 2004); Bland
ISD v. Blue, 34 S.W.3d 547, 554-55 (Tex. 2000).

 





[6]               In Reed
Tool Co. v. Copelin, 689 S.W.2d 404 (Tex. 1985), the plaintiff sued her
husband’s employer for loss of consortium for injuries he had sustained on the
job.  Reed Tool contended the suit was barred by the Workers’ Compensation Act;
the plaintiff alleged her suit was not barred under the Act’s
intentional-injury exception because Reed Tool had intentionally caused her
husband’s injury by requiring him to operate a machine that Reed Tool knew was
unsafe.  Noting the fundamental difference between a negligent injury and
intentional injury is the specific intent to inflict injury, the court held
that the intentional failure to furnish a safe place to work does not rise to
the level of intentional injury except when the employer believes its conduct
is substantially certain to cause the injury.  Id. at 406-07.





[7]               The elements of assault
are the same in both civil and criminal cases.  Morgan v. City of Alvin, 175 S.W.3d 408, 418 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing Forbes
v. Lanzl, 9 S.W.3d 895, 899 (Tex. App.—Austin 2000, pet. denied)).  A
person commits an assault by (1) intentionally, knowingly, or recklessly causing
bodily injury to another; (2) intentionally or knowingly threatening another
with imminent bodily injury; or (3) intentionally or knowingly causing physical
contact with another when the person knows or should reasonably believe that
the other will regard the contact as offensive or provocative.  Id. (citing Tex. Pen. Code Ann. §
22.01 (Vernon 2004); Forbes, 9 S.W.3d at 900; Wal-Mart Stores, Inc.
v. Odem, 929 S.W.2d 513, 522 (Tex. App.—San Antonio 1996, pet. denied)).  “Bodily
injury” means “physical pain, illness, or any impairment of physical condition”;
it is a broad term encompassing even relatively minor physical contacts so long
as they constitute more than mere offensive touching.  Forbes, 9 S.W.3d
at 900 (quoting Tex. Pen. Code Ann.
§ 1.07(a)(8)).

 





[8]               We believe the Petta
analysis is the better approach.

 





[9]               The
Williamses candidly concede an assault in their brief, acknowledging that the
officers “certainly intended to cause contact between the Taser prongs and Mr.
Williams’ body,” yet denying that they allege the officers “intended to kill,
or even seriously injury, Mr. Williams.”  (Brief of Appellees, at 12).  They
also describe Tasers as “providing no greater effect than a skin-level shock
which briefly incapacitates muscles.”  (Id. at 11).  The Williamses also
factually pled assault, alleging that the officers tackled Mr. Williams and
then “negligently began shooting him with Tasers, shocking him over and over
with 50,000 volts of electricity.”  The Williamses pled that Mr. Williams “was
killed by multiple electric shocks from Tasers wielded by Waco police
officers,” and they quoted from the autopsy report, which termed his death a
homicide caused by “multiple electrical shocks during attempted restraint by
police.”