**Opinion issued April 10, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00556-CV

———————————

### CASA DEL MAR ASSOCIATION, INC., Appellant

### V.

### GOSSEN LIVINGSTON ASSOCIATES, INC., Appellee

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Case No. 12-CV-2113**

## O P I N I O N

Appellant, Casa del Mar Association, Inc. ("Casa del Mar"), sued appellee,

architecture firm Gossen Livingston Associates, Inc. ("GLA"), for services GLA

provided during renovation of Casa del Mar's condominiums.[1]  GLA moved for summary judgment, arguing that the doctrine of collateral estoppel applied based on a previous arbitration proceeding addressing the same renovation project.  The trial court granted GLA's motion for summary judgment and dismissed Casa del Mar's case.  In its sole issue on appeal, Casa del Mar challenges the trial court's grant of summary judgment on collateral estoppel grounds.

We affirm.

## Background

Casa del Mar is the governing association for a group of condominiums called the Casa del Mar Beachfront Suites located in Galveston, Texas ("the Property").  GLA is an architecture firm that provided architectural design and other services to Casa del Mar from November 2000 until December 2007.  On November 16, 2001, Casa del Mar contracted with GLA for certain design services for the Property, which was undergoing substantial renovations and reconstruction ("the 2001 Contract").  This contract was subsequently revised and amended on multiple occasions to reflect changing conditions in the renovation project.

In August 2002, in a change order to the 2001 Contract, GLA agreed to provide architectural consulting services for balcony repair for some condominium

---

[1]     As the result of a merger, GLA was subsequently succeeded by GLMV Architecture, Inc.  However, for purposes of clarity and conformity with the pleadings filed in the trial court, we continue to refer to that party as GLA.

units that were damaged in a fire (the "fire test balconies").  GLA submitted several designs to Casa del Mar, which rejected at least one of the designs—"a Schulter design system" with an incorporated drainage system—as too complex and costly.  GLA also submitted a sloped balcony design, which the parties eventually referred to as the "bath tub" design, that Casa del Mar chose to use. The bath tub design functioned under the theory that water would infiltrate the mortar joint into the grout of the tiled balcony floor and then would evaporate out of the mortar joint over time.  A company called Belfor Construction constructed the fire test balconies.

On February 14, 2003, Casa del Mar and GLA entered into a second agreement ("the 2003 Contract"), which was based on a form contract provided by a professional architecture association.  The 2003 Contract was substantially similar in form to the 2001 Contract.  It contained an arbitration provision and a standard merger clause.  The 2003 Contract provided that GLA would first submit "Conceptual Design Documents" to Casa del Mar, and, upon Casa del Mar's approval, GLA would provide "Construction Documents consisting of Drawings and Specifications setting forth in detail the requirements for the construction of the Project."  Under a section entitled "Scope of Architect's Basic Services," GLA also agreed to provide "construction-phase administration of the construction contract."  Article 12 of the form contract instructed the parties to insert a

3

description of other services or modifications to the payment and compensation terms and further provided, "It is understood and agreed that the Architect's Basic Services under this Agreement do not include Project observation or review of the Contractor's performance or any other construction phase services, and that such services will be provided for by the Client." The 2003 Contract also provided that the agreement could be amended in writing and stated the procedure for preparation and approval of change orders.

Among the specific projects addressed in the 2003 Contract was GLA's design for a second set of balconies. The 2003 Contract provided that the "Balconies facing Seawall Blvd. will be repaired in a similar manner to repairs made to [the fire-test balconies]," and it contained details about the contemplated reconstruction of the balconies. GLA prepared the drawings for the second set of balconies, which were essentially the same as the fire test balconies and also used the bath tub design. Williams & Thomas, L.P. *d/b/a* Jamail Construction ("Jamail Construction) constructed the second set of balconies.

This same pattern was repeated for a third set of balconies, referred to by the parties as the "saw-tooth balconies," for which GLA again provided the same bath tub design that had been used on the previous two sets of balconies. On September 7, 2005, GLA provided a proposal for services indicating that the third phase of balcony repairs would utilize the previous balcony repair projects as "go-bys."

4

The proposal listed the specific work to be performed for the saw-tooth balconies. The proposal also stated, "If this Proposal is acceptable, we will prepare a Change Order to our existing Agreement." The proposal was accepted by Casa del Mar's property manager, Andy Van Baak. On December 5, 2005, GLA submitted a set of drawings to Casa del Mar for the saw-tooth balconies that was essentially the same as the drawings for the two previous sets of balconies.

On August 10, 2006, GLA submitted construction drawings based on the previous bath tub design that addressed the construction concerns specific to the saw-tooth balconies. Casa del Mar requested that Jamail Construction build a "mock up" that modified GLA's bath tub design by replacing the single piece of stainless steel flashing called for in the design with a lesser-grade steel that was in two pieces. Casa del Mar approved Jamail Construction's proposed mock up, and Jamail Construction began the construction of the saw-tooth balconies.

On January 23 and 24, 2007, Casa del Mar's employees inspected the balcony renovations on the Property and noticed staining on the saw-tooth balconies, which they documented on their "punch list." Casa del Mar's general manager also documented the staining on certain saw-tooth balconies. Jamail Construction's on-site supervisor investigated the staining and submitted a proposal to address the staining, which Casa del Mar rejected. On August 6, 2007,

5

Jamail Construction certified that the work on the balconies was substantially complete, and GLA signed the Certification for Payment on August 10, 2007.

On November 3, 2011, Casa del Mar filed a demand for arbitration against GLA and Jamail Construction. In its second amended demand for arbitration, Casa del Mar alleged that it had "contracted with [GLA] and Jamail Construction for the design and construction of improvements" to the Property, specifically naming the saw-tooth balcony reconstruction project. Casa del Mar alleged causes of action against GLA for breach of contract for "failing to properly design the balcony and exterior siding systems," breach of express warranty for services, breach of implied warranty of good and workmanlike conduct, negligence, negligent misrepresentation based on GLA's alleged representation "that it would design quality balcony and exterior siding systems for the Property," and violations of the Texas Deceptive Trade Practices Act ("DTPA"). Regarding specific design defects, Casa del Mar alleged that the design of the balcony waterproofing system was poor and incomplete, and failed to provide for proper drainage from the balconies. It attached an expert affidavit identifying GLA's failure "to design a drainage layer . . . resulting in water retention in the tile system." Casa del Mar alleged similar causes of action against Jamail Construction based on its role in constructing the balconies.

The parties conducted discovery, and GLA moved for summary judgment before the arbitration panel, contending that Casa del Mar's claims were barred by the statute of limitations. Casa del Mar subsequently argued, in a hearing on GLA's motion for summary judgment, that its claims were not based on the 2003 Contract and that the operative contract was the signed proposal from September 2005. GLA requested, in light of Casa del Mar's argument, that it be dismissed from arbitration because there was no agreement to arbitrate between itself and Casa del Mar in the 2005 proposal. It subsequently filed a written objection to arbitration and moved to dismiss, arguing:

> In a rather surprising turn of events, Casa's counsel made an admission in oral argument during hearings on [GLA's] motions for summary judgment. Casa's counsel admitted Casa has no arbitral agreement with [GLA]. Regardless of the truth of that statement, for the purposes of this motion, taking counsel at his word, this case must be dismissed as to [GLA] because the arbitration panel is without jurisdiction to make an award in this matter.

Casa del Mar objected to this argument, asserting that GLA had participated in the proceedings and had waived its right to object on the ground that there was no written agreement to arbitrate.

The arbitration panel agreed with GLA. It dismissed GLA from the arbitration, concluding that, regardless of whether the 2003 Contract or the 2005 proposal was the applicable contract, "the final outcome is the same." It concluded that if the 2005 proposal was the applicable agreement "there is no agreement to

7

arbitrate and accordingly the claims against [GLA] in this arbitration are DISMISSED." The panel then stated that, assuming the 2003 Contract was the applicable contract, "the claims filed against [GLA] are outside the 4 year statute of limitations. Accordingly the Panel GRANTS [GLA's] motion for summary judgment."

Casa del Mar proceeded against Jamail Construction before the arbitration panel on its claims of breach of contract and warranties and various negligence causes of action. Casa del Mar argued that Jamail Construction failed to perform the construction work as called for in the contract documents, failed to perform the work in accordance with project drawings and specifications, failed to perform the work in a good and workmanlike manner, and failed to properly design and construct the balcony and exterior siding systems. Casa del Mar specifically identified four conditions as alleged construction defects that constituted a breach of its contract with Jamail Construction: (1) "fishmouths" in the waterproofing membrane; (2) "reverse laps" in the waterproofing membrane; (3) lack of sealant at door thresholds; and (4) single, rather than double, ply waterproofing. Jamail Construction argued at the hearing that Casa del Mar's alleged harm was caused by GLA's deficient design, that its construction of the balconies did not breach the construction agreement, and that the alleged defects did not cause Casa del Mar's damages. Jamail Construction argued that the problems with water drainage,

8

including the staining that Casa del Mar complained of, was caused by GLA's bath tub design, which did not provide a proper drainage mechanism. Both sides presented expert testimony and other evidence addressing the nature of the balcony design, the method of construction and nature of the alleged defects, and the cause of Casa del Mar's alleged damages.

After a hearing, the arbitration panel issued its "Reasoned Award." The panel specifically stated that Casa del Mar had "originally brought claims in this proceeding against" GLA and that GLA was "dismissed from the proceeding by the Panel in response to a Motion for Summary Judgment."

Regarding Casa del Mar's claims against Jamail Construction, the panel addressed Jamail Construction's argument that Casa del Mar's alleged harm was caused by a design defect. The panel stated its findings:

> Casa [del Mar] procured architectural design services for the replacement balconies from [GLA]. The evidence demonstrated that [GLA] recommended to the Owner's representative, Mr. Van Baak, a balcony design that included an integrated drainage plane that removed water from the balcony and utilized a stainless steel counter flashing on the outside perimeter of the balconies. The Owner's representative summarily rejected the recommended design as being too complicated and too expensive. The architect was instructed to come up with a less expensive design. Additionally, the Owner's representative changed the designed exterior wall material from stucco to Hardi-Plank. The revised [GLA] balcony design was referred to as a "bathtub" design. The Owner bought and paid for this design.

9

The panel then discussed the "considerable testimony" regarding the construction document referred to as Detail 4, the design GLA had provided for the balconies in question, and noted the testimony of Jamail Construction's expert witness that the bath tub design was "high risk" and "unforgiving." It stated, "The Panel agrees with this description: however, it finds that the 'bath tub' design is what the Owner bought and paid for." It went on to conclude that "[a]ll of the testimony regarding the Detail becomes to some degree irrelevant because it is clear that the actual balcony reconstruction was not built per the Detail." The panel found that Casa del Mar, Jamail Construction, and GLA "approved the construction of the balconies to proceed based on a 'mock up' constructed by Jamail." It stated,

> Although highly discouraged by [GLA], the mock up replaced the stainless steel "counter flashing" called out on Detail 4 with a lesser grade steel referred to during the hearing as "galvanized steel." Additionally, the substituted steel was not one piece, instead it was in two pieces which caused an overlap.

The arbitration panel also found that none of the four alleged construction defects identified by Casa del Mar—the "fishmouths" and "reverse laps" in the waterproofing membrane, the lack of sealant at door thresholds, and the use of single ply waterproofing—"were shown as causing or contributing to the staining of the walls," and it concluded that the construction deficiencies "taken all together

10

do not arise to 'a material breach of contract' as the term is used under Texas construction law (which would therefore not afford, Casa a monetary remedy)."

Casa del Mar sought over one million dollars in damages from Jamail Construction, arguing that, to repair the balconies, it must complete renovations that would incorporate a drainage system. The arbitration panel concluded that Jamail Construction could not be held liable for the expense of the remedy sought by Casa del Mar, which was "based on a repair protocol that far exceeds the 'bath tub' design and agreed upon mock up." The arbitration panel stated that the "fix" used by Casa del Mar in calculating its damages

> has gone from a "bath tub" to a designed drainage system. While it is not totally clear, it appears to the panel that the propose[d] "fix" incorporates many of the attributes of the originally proffered design which was rejected as too costly by the Owner's representative. While [Casa del Mar] may choose to install the "fix," there is extreme "betterment" in the fix as contrasted with the Detail 4 and/or the installed design. [Casa del Mar] cannot recover from Jamail [Construction] costs for these betterments.

It determined that Jamail Construction was liable only for its failure to caulk the seams in the outside metal frame of the balcony. The arbitration panel concluded that the proper measure of damages was the cost of cleaning the outside wall and applying an "elastrometric paint." It held Jamail Construction thirty percent responsible for these damages, and it held Casa del Mar itself seventy percent responsible. The arbitration panel awarded Casa del Mar approximately $24,000, which was thirty percent of the cost to restore the Property to the condition it

11

would have been in had Jamail Construction properly constructed the balconies according to the agreed-upon mock up. The arbitration panel also denied all of Casa del Mar's claims sounding in tort based on the application of the economic loss doctrine.

On October 1, 2012, Casa del Mar filed suit against GLA, again alleging that GLA had breached the terms of their contract by failing to properly design the balcony and exterior siding systems and by failing "to properly perform contract administration to the standard of a competent architect" when "it allowed deviations from the plans to occur without objection." Casa del Mar also asserted causes of action for breach of express warranty for services, breach of implied warrant of good and workmanlike conduct, negligence, negligent misrepresentation, and violations of the DTPA based on the same facts.

GLA answered with a general denial and asserted the affirmative defenses of res judicata, collateral estoppel, statute of limitations, and contributory negligence, among others. On March 12, 2013, GLA moved for traditional summary judgment based on its affirmative defense of collateral estoppel. GLA argued that the arbitration proceedings addressed the same legal and factual issues as Casa del Mar's later lawsuit, and the arbitration panel's dismissal of GLA on summary judgment and its subsequent Reasoned Award against Jamail Construction were

"conclusive on the parties as to all matters of fact and law submitted to the arbitrators."

Casa del Mar responded to GLA's motion for summary judgment, arguing that, although the arbitration panel ruled on the construction defect claim against Jamail Construction, "it could not rule, and has not ruled on the merits of [Casa del Mar's] claims against [GLA] for 'design defects' and failure to properly perform contract administration" because GLA was dismissed from the arbitration proceeding a month before the hearing.

The trial court granted GLA's motion for summary judgment and dismissed all claims and causes of action asserted by Casa del Mar against GLA. Casa del Mar moved for a new trial and reconsideration of GLA's motion for summary judgment, and the trial court denied that motion. This appeal followed.

## Standard of Review

We review a trial court's ruling on a motion for summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). To prevail on a traditional summary judgment motion, the movant has the burden of proving that it is entitled to judgment as a matter of law and that there are no genuine issues of material fact. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). "We review the evidence presented

13

in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Fielding*, 289 S.W.3d at 848.

Collateral estoppel is an affirmative defense. TEX. R. CIV. P. 94; *Calabrian Corp. v. Alliance Specialty Chems., Inc.*, 418 S.W.3d 154, 165 (Tex. App.—Houston [14th Dist.] 2013, no pet.). A defendant is entitled to summary judgment based upon an affirmative defense when the defendant proves all elements of the affirmative defense. *Henry v. Masson*, 333 S.W.3d 825, 843 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000)). If the movant has done so, the burden shifts to the nonmovant to produce evidence creating a genuine issue of material fact as to the challenged element or elements in order to defeat summary judgment. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). If the nonmovant's evidence raises a fact issue, summary judgment is not appropriate. *See id.*

### Collateral Estoppel

GLA moved for summary judgment on the ground that all of Casa del Mar's claims against it are barred by collateral estoppel.

## A. Law of Collateral Estoppel

The doctrine of issue preclusion, or collateral estoppel, "is designed to promote judicial efficiency and to prevent inconsistent judgments by preventing any relitigation of an ultimate issue of fact." *Tex. Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992) (stating that collateral estoppel "prevents the relitigation of particular issues already resolved in a prior suit"). Collateral estoppel applies when an issue decided in the first action is actually litigated, essential to the prior judgment, and identical to an issue in a pending action. *Petta*, 44 S.W.3d at 579; *Zea v. Valley Feed & Supply, Inc.*, 354 S.W.3d 873, 876–77 (Tex. App.—El Paso 2011, pet. dism'd); *see also Welch v. Hrabar*, 110 S.W.3d 601, 606 (Tex. App.— Houston [14th Dist.] 2003, pet. denied) ("For collateral estoppel to apply, a party must establish (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action."). Strict mutuality of parties is no longer required. *Zea*, 354 S.W.3d at 877; *see Petta*, 44 S.W.3d at 579; *Richards v. Comm'n for Lawyer Discipline*, 35 S.W.3d 243, 249 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Rather, collateral estoppel applies when the party against whom collateral estoppel is being asserted

15

had a full and fair opportunity to litigate the issue. *Petta*, 44 S.W.3d at 579; *Zea*, 354 S.W.3d at 877.

Courts apply collateral estoppel principles to arbitration awards. *Zea*, 354 S.W.3d at 877; *Continental Holdings, Ltd. v. Leahy*, 132 S.W.3d 471, 474 (Tex. App.—Eastland 2003, no pet.); *see also Tanox, Inc. v. Akin, Gump, Strauss, Hauer, & Feld, L.L.P.*, 105 S.W.3d 244, 270 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (recognizing general rule that arbitration award can have preclusive effect). "An arbitration award is conclusive on the parties as to all matters of fact and law submitted to the arbitrators because the award has the effect of a judgment of a court of last resort." *Zea*, 354 S.W.3d at 877 (citing *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002)). "If an issue was not actually decided in a prior arbitration proceeding or if its resolution was not necessary to the arbitration award, its litigation in a subsequent proceeding is not barred by collateral estoppel." *Id.*

## B.    Analysis

GLA argues that collateral estoppel applies and estops Casa del Mar from contesting the arbitration panel's findings and that the panel's findings "negate two essential elements of each of Casa del Mar's claims: breach of any duty and cause in fact." To prevail on its collateral estoppel defense, GLA had to establish that the ultimate issues of fact that it relies upon were fully and fairly litigated in the

16

arbitration proceeding, identical to the relevant issues in the current lawsuit, and essential to the Reasoned Award issued in the arbitration proceeding. *See Petta*, 44 S.W.3d at 579.

Casa del Mar's claims, whether they sound in contract or in tort, arise out of two central allegations: Casa del Mar alleges that GLA's balcony design was defective and that GLA failed to properly fulfill its contract administration obligations. GLA argues that the arbitration panel's findings have preclusive effect in the current litigation. GLA identified several ultimate issues of fact that it argues were fully and fairly litigated in the arbitration proceedings, that are identical to issues raised by Casa del Mar's current causes of action, and that were essential to the arbitration panel's Reasoned Award. Specifically, the panel found that: (1) Casa del Mar rejected GLA's original balcony design incorporating a drainage system and instead sought the bath tub design, and it disregarded GLA's advice regarding the type of flashing that should be used; (2) the balconies were not built according to the bath tub design provided by GLA because Casa del Mar approved the construction of the balconies according to Jamail Construction's mock up instead; and (3) none of the alleged construction defects identified by Casa del Mar were shown as causes of its alleged damages and did not arise to "a material breach of contract."

17

GLA argues that, in light of the arbitration panel's determination of these ultimate facts, Casa del Mar cannot establish that GLA's design caused Casa del Mar's damages. GLA further argues that, because the arbitration panel found that the alleged construction defects identified by Casa del Mar in its claims against Jamail Construction were not a material breach of the construction contract between Casa del Mar and Jamail Construction, Casa del Mar "cannot show that GLA caused any damages in connection with contract administration."

In the arbitration proceedings, one of Jamail Construction's key defenses was that Casa del Mar's "primary criticism in this dispute is not a construction issue but is instead a design issue." Jamail Construction specifically identified Casa del Mar's expert's criticism "of the 'bath tub' design of the balconies that allows moisture to penetrate through the tiled surface of the balconies and collect in the porous setting bed without any means for the moisture to drain out of the balconies." Jamail Construction provided expert witness testimony that the bath tub design was inappropriate and that the construction drawings were unclear and defective. Both sides presented witnesses and other evidence regarding the design and ultimate construction of the balconies. The arbitration panel's Reasoned Award noted the "considerable testimony" concerning the design provided by GLA, and it addressed the copious evidence regarding how Jamail Construction and its subcontractor actually constructed the balconies.

18

Thus, the issues regarding GLA's provision of the bath tub design, the sufficiency of that design, and the role that design played in the actual construction of the balconies were fully and fairly litigated in the arbitration proceeding, and they are also issues of ultimate fact in the current proceeding, where Casa del Mar argues, among other allegations, that GLA provided a deficient design for the balconies that caused damages to the Property.

Furthermore, the nature of Casa del Mar's claims against Jamail Construction and the fact that Jamail Construction argued, in part, that the problem was a design defect, rather than a construction defect, made this fact determination essential to the panel's Reasoned Award.

The arbitration proceedings also addressed the nature of the construction defects. The crux of Casa del Mar's claim against Jamail Construction in the arbitration proceeding was that the builder's construction of the balconies was defective, causing damage to the Property. Again, both sides presented extensive evidence regarding the alleged construction defects and their effect on the Property. The issue of the quality of Jamail Construction's performance was fully and fairly litigated in the arbitration proceedings, and it was essential to the arbitration panel's ultimate resolution of Casa del Mar's allegation that Jamail Construction's defective performance in constructing the balconies caused it damages.

19

The extent to which Jamail Construction failed to construct the balconies properly is also identical to an ultimate issue of fact in the current suit. Casa del Mar has alleged that GLA failed to provide proper contract administration services "in that it allowed deviations from the plans to occur without objection." Thus, the degree to which Jamail Construction deviated from GLA's design, Casa del Mar's own knowledge of and role in that deviation, and the degree to which any alleged construction defects caused damage to the Property or constituted a breach of the construction agreement are relevant to the current suit.

Casa del Mar argues, in part, that collateral estoppel does not apply here because GLA did not participate in the arbitration hearing. However, GLA only had to establish that Casa del Mar, as the party against whom collateral estoppel is being asserted, was a party in the prior proceeding. *See Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 802 (Tex. 1994); *see also Petta*, 44 S.W.3d at 579 (stating that strict mutuality of parties is no longer required).

We conclude that GLA established each essential element of its collateral estoppel defense. We turn now to the effect of the arbitration proceeding on the current litigation.

### Effect of Collateral Estoppel on Casa del Mar's Claims

Causation is an essential element of breach of contract, breach of warranties, negligence, negligent misrepresentation, and DTPA violations—the causes of

20

action Casa del Mar alleges against GLA in the present case. *See, e.g.*, *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006) (holding that breach of warranty claims require proof of causation-in-fact); *W. Invs. v. Urena*, 162 S.W.3d 547, 550–51 (Tex. 2005) (stating that causal connection between alleged breach of duty and alleged injury is required to prevail in negligence claim); *Affordable Power, L.P. v. Buckeye Ventures, Inc.*, 347 S.W.3d 825, 830 (Tex. App.—Dallas 2011, no pet.) (holding that plaintiff must prove proximate causation to establish negligent misrepresentation); *S. Elec. Servs. Inc. v. City of Houston*, 355 S.W.3d 319, 323–24 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (discussing elements of breach of contract claim and stating that "the absence of a causal connection between the alleged breach and the damages sought will preclude recovery"); *see also* TEX. BUS. & COM. CODE ANN. § 17.50(a) (Vernon 2011) (allowing recovery under DTPA where violation constitutes "a producing cause" of damages).

Casa del Mar argues, in part, that GLA's defective design caused damage to the Property. However, the arbitration panel determined that Casa del Mar opted for the bath tub design provided by GLA because GLA's original design including an integrated drainage system was too costly; that the design provided by GLA was not used in the actual construction of the balconies because Casa del Mar agreed to the construction of the balconies according to Jamail Construction's mock up; and

21

that Casa del Mar disregarded GLA's advice on the type of flashing that should be used. Thus, because GLA's design was not actually used in constructing the balconies, Casa del Mar cannot establish that the design provided by GLA caused any damages.

Casa del Mar also argues that GLA's failures in administering the contract caused it damage. However, the arbitration panel determined that Casa del Mar agreed to the construction of the balconies according to Jamail Construction's mock up rather than according to GLA's design and disregarded GLA's objection to the type of flashing that should be used. It also concluded that the alleged construction defects identified by Casa del Mar did not cause the damages it complained of and did not constitute a material breach of the construction contract. The panel found Jamail Construction liable only for its failure to caulk the seams in the outside metal frame of the balcony. Thus, in light of these findings, Casa del Mar cannot establish that GLA's alleged failure in "allow[ing] deviations from the plans to occur without objection" caused its damages. Rather, the arbitration panel's findings compel the conclusion that there were no material deviations from the plans of which Casa del Mar was not aware at the time they occurred.

Casa del Mar argues that the arbitration panel did not find that GLA provided the design required by its contract or that GLA's design was not used for the construction of the balconies. It also argues that the arbitration panel did not

22

find that design defects had not caused its damages. However, even if these assertions are meritorious, we need not examine relevant findings that were *not* made by the arbitration panel. As discussed above, the findings that the arbitration panel did make preclude Casa del Mar from being able to establish at least one essential element of each of its claims in this suit.

We conclude that GLA demonstrated its entitlement to summary judgment as a matter of law. The burden then shifted to Casa del Mar to present evidence raising a genuine issue of material fact. *See Walker*, 924 S.W.2d at 377.

Casa del Mar argues that "[i]t is undisputed that the [arbitration panel] could not, and did not, rule on [its] design defect and construction administration claims" and thus, the doctrine of collateral estoppel did not apply because "[c]ollateral estoppel does not bar claims which have not been fully and fairly litigated." Casa del Mar also argues that the "damages sought from Jamail Construction and considered by the [arbitration panel] were not 'identical' to the damages alleged against GLA in this lawsuit and have never been 'actually litigated.'" However, collateral estoppel deals with issue preclusion. *See Barr*, 837 S.W.2d at 628 (discussing distinction between res judicata, or claim preclusion, and collateral estoppel, or issue preclusion).

The thrust of GLA's collateral estoppel defense, as analyzed above, is not that Casa del Mar's claims were barred by the arbitration proceeding, but rather

23

that ultimate issues of fact had already been determined during the arbitration proceeding in such a way as to preclude Casa del Mar from recovering on any of its causes of action in the present suit. GLA has established as a matter of law that Casa del Mar can not prevail on any of its causes of action because collateral estoppel prevents it from being able to establish one of the essential elements of each of its claims. An analysis of the damages element of its claims would not change this result.

Finally, Casa del Mar argues that the arbitration panel's findings regarding "betterment" of the balcony design, material breach, and application of the economic loss rule apply only to Jamail Construction and that GLA's statute of limitations argument has never been "actually litigated." These findings of the arbitration panel are not necessary to support our conclusion that collateral estoppel precludes Casa del Mar from prevailing in the current suit, so we need not address these arguments.

We conclude that the trial court did not err in granting summary judgment in favor of GLA and dismissing all of Casa del Mar's claims.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Brown.